**Ezequiel N. SPERA**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2002.

Decided March 3, 2003.

---

Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

Robert E. Stewart, Pittsburgh, for appellee.

**1238** ■ ▬▬▬▬▬▬▬▬▬▬▬▬

Before FRIEDMAN, J., SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE. ·

The Department of Transportation, Bureau of Driver Licensing (Department), appeals from the February 14, 2002 order of the Court of Common Pleas of Allegheny County (trial court) sustaining the statutory appeal of Ezequiel N. Spera (Licensee) from a one-year suspension of his operating privilege imposed by the Department pursuant to Section 1547(b)(1) of the Vehicle Code (Code).[1]

At the *de novo* hearing in this matter, the testimony of Officer James Daggett of the Carnegie Mellon University Campus Police Department established that Licensee was observed by Officer Ronald Pilowsky leaving a fraternity house and behaving in ways that indicated he was under the influence of either .drugs or alcohol. Licensee was observed by Officer Pilowsky entering a vehicle and driving it in a reckless manner, jumping a curb at one point.[2] Officer Daggett testified that Licensee traveled past him, nearly sideswiping his marked police vehicle. Licensee was then stopped at a red light by another officer, at which time Officer Daggett watched Licensee exit his vehicle staggering. Officer Daggett exited his · own vehicle and observed that Licensee had bloodshot eyes and the odor of alcoholic beverage on his breath. Officer Daggett testified that he witnessed Licensee fail the field sobriety test performed by another officer at the scene.

After failing the sobriety test, Licensee was placed under arrest and transported to the City of Pittsburgh Special Deployment Unit (SDU) by Officer Daggett. He was immediately placed in a cell for approximately ten to fifteen minutes, during which time he agreed to submit to a breathalyzer test. Officer Daggett testified that within five minutes, Pittsburgh Police Officer Howard McQuillen administered the test. During the test, Officer Daggett observed that Licensee was given five opportunities to blow into the breathalyzer.

Officer McQuillen, a certified breathalyzer operator and the only other witness, testified that he observed Licensee for twenty minutes and warned him that a refusal would result in the suspension of his license. Officer McQuillen also testified that during the breathalyzer test, he heard air escaping around the mouthpiece and that the breathalyzer indicated that Licensee was not blowing enough air into

---

1. This section provides:
   If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   75 Pa.C.S. § 1547(b)(1).

2. The trial court appropriately overruled Licensee's hearsay objection to Officer Daggett's testimony regarding the observations that Officer Pilowsky communicated to him.

In license suspension proceedings, the Department need not present the testimony of third parties who provide an officer with information needed to establish reasonable grounds for requesting that a licensee submit to a chemical test pursuant to 75 Pa.C.S. § 1547(a). *McCullough v. Department of Transportation, Bureau of Driver Licensing,* 165 Pa.Cmwlth. 371, 645 A.2d 378 (1994). A law enforcement officer's hearsay testimony is admissible for purposes of proving the state of mind of the officer hearing the statement or explaining the reason for the conduct of the officer in response to hearing the statement. *Id.*

it.[3] After five to eight attempts, Officer McQuillen deemed this to be a refusal for failure to provide sufficient breath samples.

At the conclusion of the hearing, the trial court sustained Licensee's appeal and reinstated his operating privilege on the sole basis that Licensee was not under observation for twenty consecutive minutes immediately prior to administration of the breath test, pursuant to Section 77.24(a) of the Department's regulations, 67 Pa.Code § 77.24(a).

On appeal from the trial court's order, the Department asks us to determine: (1) whether the evidence presented in this case was sufficient to support a finding that Licensee was properly observed for at least twenty consecutive minutes prior to administration of the breath test and (2), whether the Department's burden to sustain a license suspension based on a breath test refusal requires proof in every case that the licensee was observed in accordance with the mandates of 67 Pa.Code § 77.24(a).[4]

■ In order to sustain a license suspension under the Code, the Department must establish that the licensee (1) was arrested for driving under the influence (DUI) based on reasonable grounds that he was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to submit to the requested chemical test and (4), was warned that refusal would result in a license suspension. 75 Pa.C.S. § 1547(a); *Postgate*.

According to the Department's regulations, a licensee must be observed by a police officer or a certified breathalyzer operator for at least twenty consecutive minutes immediately prior to the administration of a breathalyzer test in order for the results generated by the machine to be admissible. 67 Pa.Code § 77.24(a). Here, the trial court specifically found Officer McQuillen's testimony that he had observed Licensee for twenty minutes prior to the start of the breathalyzer test to be not credible because (1) it was in direct conflict with Officer Daggett's estimate as to the amount of time that Licensee was in the holding cell immediately prior to the test, (2) it was not based on the Officer's own independent recollection and (3), there was no written notation as to length of time that Officer McQuillen observed Licensee before he administered the test. Moreover, on cross-examination Officer McQuillen admitted he was not in actual view of Licensee in the holding cell at any time before he began to administer the test.

The Department contends that Licensee was under continuous observation by Officer Daggett for at least five minutes during the instructions for and administration of his failed field sobriety test, for approximately six minutes during his transportation from the arrest scene to the SDU, for at least ten minutes while he was in the holding cell and for approximately five minutes before attempted administration

---

3. The parties stipulated that the breathalyzer was properly calibrated according to Department regulations.

4. Generally, our review of a license suspension appeal is limited to determining whether the trial court's decision is supported by substantial evidence, an error of law was committed, or the trial court abused its discretion. *Postgate v. Department of Transportation, Bu-* *reau of Driver Licensing*, 781 A.2d 276 (Pa. Cmwlth.2001), *appeal denied*, 568 Pa. 689, 796 A.2d 320 (2002). Whether a licensee has refused to submit to chemical testing is a question of law, subject to plenary review. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999).

of the breath test began, for a total of at least twenty consecutive minutes. The trial court, however, refused to recognize the Department's estimated observation time frames for the sobriety test and Licensee's transportation to the SDU because Officer Daggett did not testify during the hearing as to any specific times regarding these events.

Determinations as to the credibility of witnesses and the weight to be afforded their testimony are within the sole province of the trial court and will not be disturbed on appeal. *Postgate.* We are compelled to accept the trial court's decision that the Department failed to establish that Licensee was under observation for at least twenty consecutive minutes immediately prior to administration of the breath test based on its specific credibility determinations, rendering the breathalyzer machine *results* invalid in this case. However, we do not agree with the trial court's conclusion that the suspension was improper solely because the Department failed to establish observation.

Failure to submit a sufficient breath sample, whether or not a good faith effort was made to do so, constitutes a refusal *per se* to take the test unless the licensee can establish that the failure was due to a physical inability unrelated to the ingestion of alcohol or drugs. *Sweeney v. Department of Transportation, Bureau of Driver Licensing,* 804 A.2d 685 (Pa. Cmwlth.2002). If a licensee does not exert a total conscious effort to supply a sufficient breath sample, he will be deemed to have refused the test. *Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504 (Pa.Cmwlth.1996).

The Department may establish that a licensee provided insufficient breath samples by presenting either: (1) testimony of the administering officer, or (2) a printout from a properly calibrated breathalyzer indicating a deficient sample. *Pappas.* We have consistently held that the Department is not required to establish that the machine used to perform the chemical test of a licensee's breath was in working order at the time of the test where other evidence is sufficient to establish that the licensee refused to submit to the test. *Postgate; Pappas.*[5]

In *Postgate,* we determined that the Department sustained its burden of proof by demonstrating through the administering officer's testimony that the licensee was pretending to blow into the breathalyzer, thereby failing to provide a sufficient breath sample. Although there was credible evidence indicating that the breathalyzer was properly calibrated in that case, we held, nonetheless, that the Department was not required to prove that the machine was in proper working order to establish a refusal. *Id.* We reiterated that when the Department can establish a refusal without relying on results from the breathalyzer machine, the operability or suitability of the machine is simply not at issue. *Id.*

By analogy to the calibration cases interpreting Section 77.24(b) of the Department's regulations,[6] we find that where the testimony of the administering officer alone is sufficient to support a finding that the licensee did not provide an adequate breath sample, without reliance on indicia from the breathalyzer machine

---

**5.** In these two cases, we interpreted Section 77.24(b) of the Department's regulations, which sets forth breathalyzer accuracy and calibration requirements. 67 Pa.Code § 77.24(b).

**6.** 67 Pa.Code § 77.24(b).

itself, the Department need not show compliance with the observation requirements of 67 Pa.Code § 77.24(a) in order to establish a refusal.

■ Here, the only evidence relating directly to the issue of refusal is the uncontradicted testimony of Officer McQuillen which establishes that Licensee failed to supply adequate breath samples because (1) he did not blow properly into the machine and (2), he did not follow directions as to how to perform the test. On direct examination, Officer McQuillen testified as follows:

Q. When he [Licensee] attempted to blow into the machine how did you know this was not a valid reading?

A. The instrument kept blinking, "Please blow." Air would be escaping around it. He wasn't blowing enough air in to satisfy the instrument.

Q. Did you explain that to him at that time and tell him he needed to blow more air?

A. Numerous times.

. . . .

Q. Based on your experience, officer, why did you deem this to be a refusal?

A. Because he wasn't blowing properly into the instrument, and he wasn't following directions. He was laughing and swearing and acting silly. He just wasn't doing it properly.

N.T. 16–17.

On cross-examination Officer McQuillen testified as follows:

Q. Would it be safe to say you don't recall the exact manner he was blowing into the machine other than you knew he was doing it incorrectly?

A. Okay, yes.

. . . .

Q. And the fact that he was uncooperative was based on his failure to appropri-ately blow through the breathalyzer; is that right?

A. Yes, for not blowing through the instrument, and he wasn't listening and following examples.

N.T. 19–20.

Officer McQuillen also testified that the machine registered two deficient samples. However, the Department did not submit the read-outs generated from the breathalyzer machine for purposes of establishing a refusal in this case.

■ Although the trial court found insufficient credible evidence on the record to establish compliance with the observation requirement contained in 67 Pa.Code § 77.24(a), it committed an error of law in ruling that this regulation applies without exception to every license suspension case based on a refusal to submit to chemical testing.

There exists on the record substantial evidence, in the form of undisputed testimony from the certified officer administering the breathalyzer test, to conclude that Licensee refused to submit to chemical testing by failing to exert a total conscious effort to supply a sufficient breath sample. *Pappas.* Accordingly, the trial court's February 14, 2002 order sustaining Licensee's statutory appeal is reversed and the suspension of Licensee's operating privilege is reinstated.

### ORDER

AND NOW, this 3rd day of March, 2003, the order of the Court of Common Pleas of Allegheny County is REVERSED and the one-year suspension of Ezequiel N. Spera's operating privilege is REINSTATED.