Heather Ann **BOMBA**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 8, 2011.

Decided Sept. 14, 2011.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Carl A. Parise, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals an order of the Court of Common Pleas of Allegheny County (trial court) sustaining Heather Bomba's (Licensee) statutory appeal of the suspension of her driving privileges for refusing to submit to chemical testing pursuant to Section 1547(b)(1)(i) of the Vehicle Code.[1] PennDOT contends that the trial court erred in finding that Licensee's conduct did not constitute a refusal to submit to chemical testing. Discerning no error, we affirm the order of the trial court.

On October 25, 2009, Licensee was arrested in Pittsburgh and charged with driving under the influence of alcohol. On January 18, 2010, PennDOT notified Licensee that her operating privilege was being suspended for a period of 12 months, effective February 22, 2010, as a result of her refusal to submit to chemical testing at the time of her arrest. Licensee filed a statutory appeal, and a hearing was held by the trial court on April 22, 2010.

■ At the hearing, PennDOT presented the testimony of Pittsburgh Police Officer Siara Lawniczak, who administered the breath tests on the night of Licensee's arrest. Officer Lawniczak testified that Officer Gregory Laepple brought Licensee

---

1. 75 Pa.C.S. § 1547(b)(1)(i). That section provides, in pertinent part, that if any person placed under arrest for driving under the influence of alcohol "is requested to submit to chemical testing and refuses to do so, ... the department shall suspend the operating privilege of the person ... for a period of 12 months." *Id.*

to the station and, after a standard 20–minute waiting period, Officer Lawniczak read aloud the chemical testing warnings on Form DL–26. Licensee responded that she would submit to the breath test and signed the Form DL–26. Officer Lawniczak then administered a breath test using a BAC Datamaster breathalyzer machine, which had been properly calibrated and certified for accuracy.

Officer Lawniczak testified that Licensee "attempted to give one breath sample" that "was insufficient." Notes of Testimony, 4/22/2010, at 15 (N.T. ——). Officer Lawniczak explained that the breathalyzer machine allows a two-minute window to provide an adequate breath sample; if an adequate breath sample is not provided within the two-minute timeframe, the machine prompts the operator to report whether a refusal has occurred. On the night in question, Officer Lawniczak instructed Licensee to "blow with one steady breath until . . . told to stop." *Id.* Instead, Licensee gave "a series of short breaths, not one continuous breath." N.T. 16. After two minutes had elapsed, the breathalyzer instrument prompted the officer to report whether there had been a refusal, and Officer Lawniczak pressed the "yes" button.

On cross-examination, Officer Lawniczak admitted that Licensee may have asked to retake the breath test; however, the officer stated that she is "only required to give one test." N.T. 25. Another test, according to the officer, would have taken ten minutes. Licensee's refusal took place approximately one hour after her arrest. The Vehicle Code provides a two-hour window of time following an arrest during which the breath test can be administered, as Officer Lawniczak acknowledged. 75 Pa.C.S. § 3802(a)(2).[2]

Licensee called the arresting officer, Officer Laepple, to testify. He testified that Licensee was polite and cooperative at the time of her arrest and that he was present during Licensee's attempt to produce a breath sample. Officer Laepple confirmed that Licensee's breath sample was insufficient.

Licensee testified on her own behalf. She acknowledged that Officer Lawniczak instructed her on how to provide a breath sample and explained that she "tried the best [she] could." N.T. 63. Licensee attributed her inability to do the test the first time to being "very upset" by her arrest and placement in a holding cell. N.T. 60. Licensee testified that when she learned she was being considered a refusal, she immediately asked for another chance to do the breath test. According to Licensee,

> [Officer Lawniczak] told me she was marking me a refusal. At that point I tried to ask her, please, give it to me again, please, I want to try again. She did not let me do that.

N.T. 61. Instead, Officer Lawniczak asked Officer Laepple to remove her from the testing room. Licensee testified that she did not refuse to take the breath test.

The trial court considered the evidence and made the following findings:

> The primary reason that the Courts look with disfavor upon the practice of a motorist who delays and requests a second test or changes her mind much later

---

**2.** Section 3802(a)(2) establishes the "two-hour rule," providing:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% *within two hours after the individual has driven,* operated or been in actual physical control of the movement of the vehicle.
>
> 75 Pa.C.S. § 3802(a)(2) (emphasis added).

following a refusal, is due to the effect of such a delay on the test itself. A long delay increases the potential for inaccurate test results. *Commonwealth of Pennsylvania, Department of Transportation v. Belle* [105 Pa.Cmwlth. 468], 524 A.2d 1060 (Pa.Cmwlth.1987).

Here, Officer Lawniczak testified that [Licensee] gave her consent to the breath test and her testimony was corroborated by [Licensee]. This consent was nothing less than unqualified and unequivocal. She was then unable to complete the breath test in the two minutes permitted, but immediately requested that Officer Lawniczak administer a second test. Officer Lawniczak stated that the second test would take about ten (10) minutes. There is absolutely no evidence that [Licensee] was attempting to delay the administration of the test, which may have resulted in an inaccurate reading.

[Licensee's] initial, unequivocal and unqualified consent to the breath test, her subsequent inability to perform it properly, despite attempting to do so and her immediate request to re-take the breath test, do not amount to a refusal under these circumstances.

Trial Court Opinion at 3–4. The trial court sustained Licensee's statutory appeal.

 In its appeal to this Court,[3] PennDOT contends that the trial court erred. Specifically, PennDOT claims that Officer Lawniczak was not required to give Licensee a second breath test. Licensee counters that she attempted to follow the officer's instructions and, when her effort proved unsuccessful, she pleaded with the officer to administer a second test. Licensee emphasizes that at no time did she refuse to consent to the breathalyzer test.

 In order to sustain a 12-month suspension of a licensee's operating privileges, the Department must establish that the licensee: (1) was arrested by a police officer who had reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that refusal would result in a license suspension. *Quick v. Department of Transportation, Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth.2007). Any response from a licensee that is less than an unqualified, unequivocal assent to a chemical test constitutes a refusal. *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa.Cmwlth.2003). A licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal to submit to testing. *Id.* Questions of credibility are for the trial court. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 248, 555 A.2d 873, 875 (1989).

Here, PennDOT challenges the trial court's finding that Licensee's conduct did not constitute a refusal to submit to chemical testing. PennDOT argues that it satisfied its burden of proof: Licensee stipulated that Officer Laepple had reasonable grounds to arrest her for DUI; Officer Lawniczak warned her that a refusal to submit to chemical testing would result in

___

**3.** The issue of whether there was a refusal to submit to chemical testing is a question of law subject to plenary review by this Court. *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90, 93 (Pa.Cmwlth. 1995). Our scope of review is limited to "determining whether the trial court's find-

ings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *McCloskey v. Department of Transportation, Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa.Cmwlth.1999).

a 12–month license suspension; Licensee consented to take a breath test but failed to provide an adequate breath sample within the two-minute timeframe allowed by the breathalyzer machine. PennDOT contends that Officer Lawniczak was not required to provide Licensee with a second opportunity to do a breath test.

In advancing its argument that a licensee gets only one opportunity to provide a valid breath sample, PennDOT relies on *Sweeney v. Department of Transportation, Bureau of Driver Licensing*, 804 A.2d 685, 687 n. 4 (Pa.Cmwlth.2002). In that case, this Court held that

> failure to complete a breathalyzer test constitutes a refusal. A trial court's finding that a licensee made a good faith attempt to complete the breathalyzer test is irrelevant to the question of whether the licensee refused the test. Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal.

*Id.* (quoting *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa.Cmwlth. 484, 593 A.2d 932, 935 (1991)) (emphasis omitted). PennDOT also relies on *Spera v. Department of Transportation, Bureau of Driver Licensing*, 817 A.2d 1236 (Pa.Cmwlth.2003), where this Court held that a licensee's conduct constituted a refusal because he failed to follow the administering officer's instructions and did not blow properly into the machine. We noted that the licensee failed "to exert a total conscious effort to supply a sufficient breath sample." *Id.* at 1241.

The cases cited by PennDOT are factually distinguishable from the case at hand. The licensees in *Sweeney, Kilrain* and *Spera* attempted multiple times to provide

an adequate breath sample but failed to do so. In *Sweeney*, the licensee "attempted many times to blow into the mouthpiece, but her breaths were not hard enough or long enough." *Sweeney*, 804 A.2d at 686. In *Kilrain*, the licensee "made five attempts to complete a *second* breathalyzer test and failed." *Kilrain*, 593 A.2d at 933 (emphasis added). Finally, the licensee in *Spera* made "five to eight attempts" before the officer deemed his conduct a refusal for failure to provide sufficient breath samples. *Spera*, 817 A.2d at 1239.

As noted by the trial court, the above-cited cases reflect the need to avoid inaccurate test results caused by long delays in the testing process. That concern was simply not present in Licensee's case. Licensee made one attempt to provide a breath sample. When it was not successful, she immediately asked to try again. PennDOT offered no evidence that Licensee was attempting to delay the testing process or was intentionally producing an inadequate sample.

PennDOT also cites *Department of Transportation, Bureau of Traffic Safety v. Ferrara*, 89 Pa.Cmwlth. 549, 493 A.2d 154 (1985), to support its argument that Officer Lawniczak had no obligation to offer Licensee a second opportunity to take the breath test. Specifically, PennDOT cites this Court's statement in *Ferrara* that "[p]olice officers are not required to spend time either cajoling an arrestee or waiting for [her] to change [her] mind." *Id.* at 156–157.

The language PennDOT lifts from *Ferrara* is inapposite. There is no evidence that Licensee employed stall tactics, such as deliberately not following instructions, thereby requiring Officer Lawniczak to cajole her or wait for her to comply.[4] Licen-

---

4. Notably, according to Licensee's unrefuted testimony, she tried to cajole Officer Lawnic-

see was permitted one, and only one, chance to perform the test. She admitted that she "messed up" because of nerves, attributed to the stress of her first arrest. N.T. 60. The arresting officer testified that Licensee was polite and cooperative. Everyone present agreed that Licensee consented to the first breath test and immediately requested another opportunity upon learning that her breath sample had been inadequate. Significantly, only one hour had transpired since Licensee was arrested; thus, Licensee's request was made well within the two-hour window of time following an arrest during which the breath test can be administered. 75 Pa. C.S. § 3802(a)(2). Stated otherwise, there was no danger that a test conducted ten minutes later would have produced an inaccurate result.

It is well established that anything other than an unqualified, unequivocal assent to a chemical test constitutes a refusal. What is less clear is how many chances a licensee must be given to consent or refuse. Refusal cases are highly fact-sensitive. The crucial, determinative factor we glean from the cases is whether Penn-DOT's evidence shows that the licensee deliberately tried to delay or undermine the testing process. Such evidence was simply not present in this case. Rather, the evidence showed, and the trial court found, that Licensee made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time. This conduct does not constitute a refusal. Stated otherwise, PennDOT is incorrect that in every case where the officer decides not to give the licensee a second chance at a breathalyzer, it has proven a refusal to consent to chemical testing.

Accordingly, we affirm the trial court's order.

zak into letting her take a second breath test.

## ORDER

AND NOW, this 14th day of September, 2011, the order of the Court of Common Pleas of Allegheny County dated October 5, 2010, in the above-captioned matter is hereby AFFIRMED.