## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marie Mushinsky | : | |
| | : | |
| v. | : | No. 570 C.D. 2016 |
| | : | Submitted: November 10, 2016 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| | : | |
| Appellant | : | |


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  February 21, 2017**


The Department of Transportation, Bureau of Driver Licensing (Department) appeals from a March 15, 2016 order of the Court of Common Pleas of Luzerne County (Trial Court), granting the appeal of Marie Mushinsky (Licensee) from a one-year suspension of her driver's license imposed by the Department for refusal of chemical testing in violation of Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly known as the Implied Consent Law.   For the reasons set forth below, we reverse.[1]

---

[1] The issue of whether there was a refusal to submit to chemical testing is a question of law subject to this Court's plenary review. *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90, 93 (Pa. Cmwlth. 1995).   Our scope of review is limited to determining whether the trial court's findings are supported by competent evidence, errors of law **(Footnote continued on next page…)**

This matter arises out of a November 14, 2015 incident in which Licensee was taken into custody following a minor vehicle accident. A Wilkes-Barre Police Department Officer (Officer) dispatched to the scene found Licensee in the driver's seat and detected an odor of alcohol emanating from within her vehicle; he stated that Licensee was unable to comply with his request that she place her vehicle in park and shut off the engine, so he reached into the vehicle and did so himself. (March 14, 2016 Transcript of Proceedings (H.T.), Reproduced Record (R.R.) at 41a.) Officer requested that Licensee exit her vehicle and she stumbled as she did so. Finding "overwhelmingly enough evidence," Officer took Licensee into custody for suspicion of driving under the influence, and transported her to the Luzerne County DUI Center. (*Id.*) There, Officer observed the operator on duty at the DUI Center, Detective Casey (Detective), as he read the implied consent warnings to Licensee and administered a chemical breath test. (*Id.*, R.R. at 42a-43a.) After completing the first test sample, which yielded a blood alcohol content reading of 0.259 percent, Licensee failed to properly complete a second sample,[2] and her failure to comply was deemed a refusal; Licensee refused to sign the DL-26 form. (*Id.*, R.R. at 42a, 44a.)

By notice dated December 1, 2015, the Department informed Licensee that her license was suspended for a period of one year effective January 5, 2016 based on her refusal to submit to a chemical breath test on November 14, 2015. (R.R. at 30a-32a.) Licensee appealed the suspension and a *de novo* hearing

---

**(continued…)**

have been committed, or the trial court has abused its discretion. *McCloskey v. Department of Transportation, Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa. Cmwlth. 1999).

[2] Pursuant to 67 Pa. Code § 77.24, authorities are required to obtain two consecutive valid breath samples.

was held before the Trial Court on March 14, 2016. (Petition for Appeal, R.R. at 28a-29a; H.T., R.R. at 40a-48a.) The Trial Court granted Licensee's appeal and the Department appealed to this Court, arguing that the Trial Court erred as a matter of law in holding that Licensee did not refuse chemical testing.

At the hearing, Officer read from his affidavit of probable cause, wherein he stated, *inter alia*, that Detective advised Licensee that the police requested a chemical breath test, and that after explaining the process to Licensee several times, Licensee continued to ask to speak with her sister; after Detective read the DL-26 form to Licensee, she agreed to perform the chemical breath test. (H.T., R.R. at 42a.)

Detective testified that throughout the processing, Licensee was not following instructions, stating:

> But the whole entire processing of [Licensee] she wasn't following instructions. And I give very explicit and simple instructions of once you start to blow, do not stop, blow good, strong and steady until I tell you to stop and before you start to make a nice tight seal around the tip of the mouthpiece as if you're blowing into a straw. Those are historically the same commands I give to everybody. [Licensee] said that she understood but when – if you were to examine the [Datamaster] ticket, her breathing pattern is not consistent with the instruction I provided on either test number one or two.

(*Id*., R.R. at 43a-44a.) He testified further that although he provided the instruction to provide a good, strong and steady breath until directed to stop, the Datamaster report graph for the first test indicates that Licensee introduced at least six breaths and then stopped, and that only when she introduced enough air and continued to blow for a long enough period did the instrument capture the sample. (*Id*., R.R. at 44a; Subject Test, R.R. at 58a.) Detective stated that the Datamaster report graph

for the second test demonstrates that during that test, Licensee's proffered breath sample faded off, stopped, and then after three additional breaths, Licensee sucked back into the instrument, causing it to register as a "suck-back" error, which invalidated the test. (*Id*.) Detective testified that at that point, he informed Licensee that she had not performed the test correctly, and he was going to record a refusal. (H.T., R.R. at 44a.)

Licensee testified that Detective did not offer her the opportunity to provide a third breath sample or to submit to a blood test, and it was not her intention to not give a sample. (*Id*., R.R. at 47a.) Licensee also acknowledged that Detective had instructed her on how to perform the breath test, how to make a tight seal around the tubing, and instructed her that she needed to blow steadily until he told her to stop, and she stated that she believed she had performed the test to the best of her ability. (*Id*.)

In its opinion, the Trial Court noted that it regarded its decision as a determination of law rather than one of credibility, and found that "[t]o the extent that good faith plays any role in the refusal analysis…[Licensee] acted in good faith during the process of attempting to comply with [Detective's] instructions." (Trial Court Opinion, R.R. at 27a, 27a n.4.) The Trial Court further found that "there is reasonable explanation for [Licensee's] failure to complete the second test given the number of breaths required before the machine 'captured' the initial sample and the description contained in the record concerning [Licensee's] attempt to provide a second sample." (*Id*., footnote omitted.)

In order to sustain a suspension of operating privileges under the Implied Consent Law, the Department is required to prove that the licensee (i) was arrested for driving under the influence by a police officer who had reasonable

4

grounds to believe that the licensee was operating the vehicle under the influence of alcohol or a controlled substance; (ii) was asked to submit to a chemical test; (iii) refused to do so; and (iv) was warned that a refusal would result in a suspension of operating privileges. *Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). Once the Department meets its burden of showing that the licensee refused chemical testing, the burden shifts to the licensee to show that he or she was not capable of making a knowing and conscious refusal or was physically unable to take the test. *Giannopoulos v. Department of Transportation, Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013); *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

When a licensee fails to "exert a total conscious effort, and thereby fails to supply a sufficient breath sample, such is tantamount to a refusal to take the test." *Appeal of Budd*, 442 A.2d 404, 406 (Pa. Cmwlth. 1982). Even a licensee's good faith attempt to comply with the test constitutes a refusal where the licensee fails to supply a sufficient breath sample, absent a proven medical reason that precludes a licensee from doing so. *Sweeney v. Department of Transportation, Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002); *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504, 508 (Pa. Cmwlth. 1996); *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 593 A.2d 932, 935 (Pa. Cmwlth. 1991) ("Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal"); *Department of Transportation, Bureau of Driver Licensing v. Berta*, 549 A.2d 262, 264 (Pa. Cmwlth. 1988). Given our well-established law,

5

Licensee's "good faith" attempt to complete a second breath test cannot excuse her failure to do so.

Licensee argues that our Court's decision in *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa. Cmwlth. 2011), where the licensee gave unqualified consent to breath testing, was unable to provide an adequate sample within the timeframe allowed by the machine and immediately sought to retake the test but was refused, is instructive and should be followed here. However, *Bomba* is readily distinguishable. There, our Court found that licensee's conduct did not constitute a refusal; *Bomba* did not involve a situation wherein there were multiple attempts to provide an adequate breath sample, nor was there any record evidence that the licensee deliberately failed to follow instructions or undermine the testing process in any way. *Id.* at 951. In *Bomba*, the licensee was provided with just *one* opportunity to provide an adequate breath sample; she attributed her inability to perform the test the first time to being upset by her arrest and placement in a holding cell and, upon hearing that her failure to complete the test would be deemed a refusal, she immediately asked for another chance. *Id.* at 948-949.

*Sub judice*, there is ample evidence in the form of testimony of both Officer and Detective that Licensee was hesitant to take the test, and repeatedly asked to see her sister prior to taking the test; despite being provided with instructions, repeatedly and patiently administered, she did not follow them, and although there is no evidence that she was unable to perform the test the way she had been told to perform it, she did not do so. (H.T., R.R. at 42a-44a.) As the Court noted in *Bomba*, refusal cases are highly fact sensitive, and "[the Department] is incorrect that in every case where the officer decides not to give the

licensee a second chance at a breathalyzer, it has proven a refusal to consent to chemical testing." 28 A.3d at 951. We find in this case that Licensee was given more than sufficient opportunity to perform the test and her failure to follow Detective's instructions and to blow properly into the machine, even after she ultimately managed to blow sufficiently on the first test to allow the breathalyzer to capture a reading, constitutes a refusal.[3] Licensee did not offer any evidence to show that she could not have made a knowing and conscious decision to refuse testing or that she was physically incapable of completing a breath test.

For the foregoing reasons, we reverse the Trial Court, and direct the Department to reinstate the one-year suspension of Licensee's operating privilege imposed in accordance with the Implied Consent Law.

_____
JAMES GARDNER COLINS, Senior Judge

---

[3] Licensee also argues that the Department has not established that the second breath test was taken within a two-hour time limit beginning with her arrest, as set forth in the Vehicle Code, 75 Pa. C.S. § 3802(a)(2). This argument is completely without merit. Section 3802(a)(2) relates to driving under the influence of alcohol or controlled substance-general impairment and provides: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa. C.S. § 3802(a)(2). First, the record conclusively shows that the tests were administered within two hours of Licensee's arrest. (H.T., R.R. at 41a-42a, 58a.) Second, our Courts have consistently held that a licensee may not seek civil remedies, i.e., reversal of a license suspension, where her rights as a criminal defendant have been compromised. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 21 (Pa. Cmwlth. 2010).

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Mushinsky              :
:
           v.           :  No. 570 C.D. 2016
:
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
:
           Appellant   :

## O R D E R

AND NOW, this 21st day of February, 2017, the order of March 18, 2016 of the Court of Common Pleas of Luzerne County in the above-captioned case is REVERSED.

_____
JAMES GARDNER COLINS, Senior Judge