IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Anthony Cornish,     :
             :
       Appellant :
             :
     v.       : No. 1440 C.D. 2021
             : Submitted: March 8, 2024
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing    :

BEFORE:  HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE STACY WALLACE, Judge

OPINION BY JUDGE WOJCIK      FILED: August 21, 2024

    Scott Anthony Cornish (Licensee) appeals from the November 22, 2021 order of the Court of Common Pleas of Westmoreland County (trial court) that denied his appeal from a 12-month suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i), based on his refusal to submit to a chemical test.[1] Licensee

---

[1] Commonly known as the "Implied Consent Law," Section 1547 of the Vehicle Code states in relevant part:

> (a) **General rule.** -- Any person who drives, operates or is in actual control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content

**(Footnote continued on next page…)**

argues that DOT failed to carry its burden in demonstrating Licensee refused to submit to a breath test. Upon careful review, we vacate and remand for further proceedings consistent with this opinion.

By notice mailed on January 18, 2021, DOT warned Licensee that his driving privilege would be suspended for 12 months, effective February 22, 2021, based on his refusal to submit to chemical testing on January 1, 2021. Reproduced Record (R.R.) at 6a. Licensee filed a timely appeal in the trial court, which conducted a *de novo* hearing on July 1, 2021.

At the hearing, DOT presented the testimony of Scottdale Borough Police Officer Ryan Layton (Officer Layton). Officer Layton testified that he was on duty as a patrol officer on January 1, 2021, when, at 1:20 a.m., he observed

of blood or the presence of a controlled substance if a police officer has grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [Section 1543(b)(1.1) of the Vehicle Code, 75 Pa. C.S. §1543(b)(1.1)] (relating to driving while operating privilege is suspended or revoked), 3802[, 75 Pa. C.S. §3802] (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2)[, 75 Pa. C.S.§3803(a)(2)] (relating to illegally operating equipped with ignition interlock).

**(b) Civil penalties for refusal.**--

(1) If any person placed under arrest for a violation of [Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802,] is requested to submit to testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(a), (b)(1)(i).

2

Licensee driving his automobile northbound on State Route 819 - but in the southbound lane. Trial Court Hearing, 7/1/2021, Notes of Testimony (N.T.), at 15, 17. After briefly following Licensee, Officer Layton conducted a traffic stop, during which he observed that Licensee had "glassy, bloodshot eyes" and smelled of alcohol. *Id*. at 18. Further, after being asked for his license, registration, and proof of insurance, Licensee only provided his license and did not bother to look for his registration or proof of insurance. *Id*. Officer Layton requested those documents a second time, but Licensee still failed to produce them. *Id*.

Officer Layton then asked Licensee whether he had been drinking that night, and Licensee admitted to drinking two shots of Jameson whiskey. *Id*. At this point, Officer Layton asked Licensee to perform field sobriety tests. *Id*. at 20. Officer Layton related that the Horizontal Gaze Nystagmus test indicated "all six clues" of impairment, and that the walk-and-turn test and one-leg stand likewise indicated impairment. *Id*. Consequently, Officer Layton arrested Licensee for driving under the influence. *Id*.

After transporting Licensee to the Scottdale Borough Police Station, Officer Layton read the DL-26A form to Licensee and asked if he would consent to a breath test. Trial Court Hearing, N.T., at 21. Licensee consented and signed the form. *Id*. Relevant now, Officer Frank Doner attempted to administer the breath test. *Id*. at 22. However, per ***Officer Layton's*** testimony, Licensee failed to complete the breath test, because he would blow into the device but then stop, and at one point was "sucking in instead of blowing air out[,]" resulting in a suck back error. *Id*. at 26-27. Subsequently, Officer Layton asked Licensee if he would consent to a blood test, read him the DL-26B form, and transported him to Frick Hospital for testing. *Id*. at 22-23. Upon arrival, an employee at the registration desk

3

asked Licensee if he would consent to the hospital billing his insurance company. *Id.* Licensee responded by stating, "no, never, what are you treating me for?" *Id.* After Officer Layton reminded him that it was for his blood draw, Licensee again expressed his confusion regarding the need for one and stated that he was sober. *Id.* at 23-24. Officer Layton considered this to be a refusal and then transported Licensee to his father's house. *Id.*

At this point, the trial court attempted to expedite the proceedings, and sought a stipulation from Licensee's Counsel:

> The Court: Well, based upon that, let me just -- let's just get to the point.
>
> Will you stipulate that his testimony would be that Officer Doner, that his testimony would be that he didn't make enough of an effort to -- or he didn't make enough of an effort, therefore that constitutes a refusal?
>
> [Licensee's Counsel]: ***Your honor, we would stipulate that the test was offered to him and it was given to him, and it was not completed***.
>
> The Court: Okay. I just want to cut to the chase.
>
> [DOT's Counsel]: Yes.
>
> The Court: The argument here is, was there a refusal of the blood test at the hospital, correct?
>
> [Licensee's Counsel]: That's going to be my argument, Judge.
>
> * * *
>
> The Court: Yeah, because Officer Doner is only pertinent and relevant to the first test and, of course, a determination has to be made there, as well, but he doesn't really add anything to the inquiry that we're here for.

4

> [DOT's Counsel]: Only to the extent, Your Honor, that he could testify as to the indicia that [Licensee] wasn't making a good-faith effort with regard to the first test.
>
> The Court: Well, I think -- you're really stipulating?
>
> [Licensee's Counsel]: Judge, I --
>
> The Court: ***Well, no. You're just saying that it was not completed?***

Trial Court Hearing, N.T., at 24.

Instead of eliciting further testimony regarding the breath test from Officer Doner, who was available to testify, the trial court stated:

> Here's the problem -- procedurally -- I mean, they gave him an opportunity to -- take a blood test. So, at that point in time, whatever happened before, he still had the open option of taking a blood test, factually.
>
> He just -- and I think -- legally, I think the case is that if you move to the second blood test, the second kind of blood test, then they're giving him a chance to do it, to do the blood, as opposed to breath in this instance.
>
> So I really do think that we're here at an argument point. Was this process conducted properly?

Trial Court Hearing, N.T., at 24 (interruptions omitted). Thus, the remainder of the testimony elicited at the trial court hearing pertained solely and exclusively to the blood test. *Id*. at 35-41. On that point, Licensee's Counsel likened the instant matter to *Lutz v. Department of Transportation, Bureau of Driver Licensing*, 734 A.2d 478, 481 (Pa. Cmwlth. 1999) (refusal to assume financial responsibility of a blood test does not constitute a refusal of the blood test itself), and the trial court agreed. *Id*.

5

at 39. DOT declined to offer further argument and the trial court sustained Licensee's appeal. R.R. at 43a.

Shortly thereafter, however, DOT filed a Motion for Reconsideration. Relying on *Olbrish v. Department of Transportation, Bureau of Driver Licensing*, 619 A.2d 397, 399 (Pa. Cmwlth. 1992), DOT argued that the trial court erred by finding Officer Layton waived Licensee's breath test refusal when he permitted Licensee to take a blood test instead. *See* R.R. at 49a, 56a-57a. In DOT's view, *Olbrish* established the following principle: once a licensee has refused a single instance of chemical testing, anything an officer does thereafter is rendered gratuitous and will not nullify the earlier refusal, unless the licensee completes the gratuitously offered chemical testing. *Id*. at 57a. Thus, Officer Layton's conduct concerning the blood test could not serve to "vitiate" Licensee's earlier breath test refusal. *Id*. In response, Licensee argued that Officer Layton's testimony alone was insufficient to establish a refusal. *Id*. at 64a.

In an opinion and order issued on November 22, 2021, the trial court adopted DOT's position. First, the trial court recognized that it was mistaken when it considered the blood test, rather than the breath test, as the subject of Licensee's appeal: "The form DL-26([A]) (5-20), used, and herein, bears the legend, USE FOR BREATH TEST, at the top. It is, therefore, a breath test, and the purported refusal thereof, that is the subject of this appeal." Trial Court's Op. at 1. To that end, although "presented somewhat unorthodoxly," the trial court viewed Officer Layton's testimony as sufficient to establish that Licensee's conduct amounted to a refusal: "While [Officer] Layton did not administer the breath test, he did witness it, and was able to convey what he witnessed in testimony." *Id*. at 3. Hence, upon

6

reconsideration, the trial court denied Licensee's appeal. Licensee then filed the instant appeal to this Court.

On appeal, Licensee argues that the trial court erred by finding DOT presented sufficient evidence to establish a breath test refusal as required under the Implied Consent Law. We agree.

Initially, upon review, we must note that "it is not the province of this Court to make new or different findings of fact" from that of the trial court. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008) (citing *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181 (Pa. Cmwlth. 2005)). So long as the trial court's findings are supported by substantial, competent evidence, we will not disturb them on appeal. *Id*. Additionally, we must view the evidence in a light most favorable to the party that prevailed before the trial court. *Id*. (citing *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154 (Pa. Cmwlth. 1998)). Similarly, "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder[,]" and the trial court may accept or reject the testimony of a witness in whole or in part. *Reinhart*, 954 A.2d at 765.

Next, we will only sustain a suspension of a licensee's operating privilege under the Implied Consent Law if DOT establishes that (1) the driver was arrested for driving under the influence by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) the driver was asked to submit to a chemical test; (3) the driver refused to take the chemical test; and (4) the driver was specifically warned that refusing the test would result in the revocation of his or her driver's

7

license. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). DOT must show that the licensee was offered a meaningful opportunity to comply with the Implied Consent Law. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 718 (Pa. Cmwlth. 2000).

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Additionally, "Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto." *Factor v. Department of Transportation, Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018). Similarly, "[t]his Court has attempted to steadfastly recognize that a licensee's failure to provide breath samples sufficient to complete a breathalyzer test constitutes a refusal." *Mueller v. Department of Transportation, Bureau of Licensing*, 657 A.2d 90, 94 (Pa. Cmwlth. 1995).

Presently, Licensee argues that DOT failed to carry its burden of proof in demonstrating that he refused his breath test, because the evidence relied upon was inadequate for the purposes of establishing that Licensee provided insufficient breath samples. Licensee's Brief at 18-19. On this point, Licensee relies on our decision in *Valania v. Department of Transportation, Bureau of Driver Licensing*, 695 A.2d 953, 955 (Pa. Cmwlth. 1997), wherein we observed that DOT may establish that the licensee provided insufficient breath samples by presenting the testimony of the administering officer or a printout from the breathalyzer machine indicating a "deficient sample." Because the trial court here relied on the testimony

8

of the arresting officer, Officer Layton, rather than the testimony of the administering officer, Officer Doner, Licensee contends DOT failed to carry its burden. Licensee's Brief at 21-22. Finally, Licensee argues that any purported stipulation did not reach actual agreement at the trial court hearing, and, in any event, Licensee's Counsel simply stated that the breath test was not completed, rather than stating Licensee gave insufficient breath samples. *Id*. at 22-23.

DOT rejoins that our case law is split on the issue, because in *Rukavina v. Commonwealth*, 425 A.2d 472, 472-73 (Pa. Cmwlth. 1981), we rejected the licensee's argument that DOT failed to establish a refusal because it did not present the testimony of the administering officer, but instead presented the testimony of the assisting officer who had sufficient experience in assisting tests. DOT's Brief at 19 n.6. Additionally, DOT argues that Licensee is bound by his stipulation before the trial court. *Id*. at 16-18.

To be sure, in *Rukavina*, 425 A.2d at 473, we did not fault DOT for presenting the testimony of the "assisting" officer rather than the administering officer. Instead, we stated: "The officer need not have been certified as a breathalyzer operator in order to give his opinion that the appellant had refused to take the test. The record indicates that his conclusion was based on his experience in assisting at 15 to 20 such tests and was an evaluation of the conduct and the demeanor of the appellant, not an evaluation of the machine's operation." *Id*. We therefore deferred to the trial court's determination that the licensee had refused the breath test based on this testimony to be of critical import. *Id*.

However, in *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504, 508 (Pa. Cmwlth. 1996), we considered whether DOT had carried its burden of proof in establishing a licensee's breath test refusal

9

by presenting evidence of two printouts from a breathalyzer machine indicating an insufficient sample. Relevant here, the trial court below reversed the licensee's suspensions, in part because it found that DOT had not proven that the printouts presented as evidence were from a *properly calibrated* breathalyzer machine. *Id*. at 507. On that point, we stated that "a refusal is supported by substantial evidence where the breathalyzer administrator testifies that the licensee did not provide sufficient breath." *Pappas*, 669 A.2d at 508. However, DOT may also "establish refusal under these circumstances by presenting a printout form from a properly calibrated breathalyzer indicating a 'deficient sample.'" *Id*. (citing *Department of Transportation, Bureau of Driver Licensing v. Lohner*, 624 A.2d 792 (Pa. Cmwlth. 1993)). Ultimately, we found that DOT had in fact proven that the breathalyzer machine was properly calibrated and thus reversed the decision of the trial court. *Id.*

Indeed, since our decision therein, we have not lessened or otherwise tempered DOT's evidentiary burden. For example, Licensee correctly notes that in *Valania*, 695 A.2d at 954-55, we reversed the decision of the trial court which found DOT had carried its burden of establishing a breath test refusal for an insufficient breath sample. We did so even though DOT had attempted to carry its burden by presenting video evidence of the breath test, the testimony of the arresting officer, and printout evidence from the breathalyzer machine. *Id*. However, we reasoned none of this evidence sufficed, because "the *administering officer* did not testify" before the trial court and the printout form from the breathalyzer machine indicated "inconsistent breaths" rather than a "deficient sample." *Id*. (emphasis added). "Because there [was] no testimony or documentary evidence that the licensee supplied 'insufficient' breath samples, which would constitute a refusal, we conclude[d] that the trial court erred in basing its decision on such a finding." *Id*.

10

Further, *Pappas* has remained the seminal case on the matter. In *Postgate v. Department of Transportation, Bureau of Driver Licensing*, 781 A.2d 276, 279 (Pa. Cmwlth. 2001), we affirmed the trial court's denial of the licensee's statutory appeal, because "DOT clearly sustained its burden of proof under *Pappas*[,]" in which "we identified two methods that DOT may utilize to establish that a licensee refused chemical testing by failing to provide sufficient breath samples." So too in *Spera v. Department of Transportation, Bureau of Driver Licensing*, 817 A.2d 1236, 1240-41 (Pa. Cmwlth. 2003), we considered whether the administering officer's testimony alone was sufficient to establish DOT's conformance with its own regulations.[2] We found that the administering officer's testimony alone was sufficient, and in doing so, relied on DOT's evidentiary burden as explained in *Pappas*. *Id.*

Then again, in *Mondini v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1192, 1194-95 (Pa. Cmwlth. 2005), we reversed the decision of the trial court to uphold a licensee's suspension, although DOT presented the testimony of the arresting officer and two printout forms from the breathalyzer machine indicating a deficient breath sample. *Id.* In fact, we relied on the strict standard found in *Pappas*:

> In the instant case, DOT has failed to present either the testimony of the administrator of the test, [] or to demonstrate that the intoxilyzer machine was properly calibrated. The testimony of the [arresting officer], which did not address calibration of the intoxilyzer machine, is insufficient based on test set forth in *Pappas* . . . .

*Id.*

---

[2] Specifically, whether DOT must prove "in every case that the licensee was observed in accordance with the mandates of 67 Pa. Code §77.24(a)." *Spera*, 817 A.2d at 1239.

11

Additionally, although not explicitly relying on *Pappas*, in *Giannopoulos v. Department of Transportation, Bureau of Driver Licensing*, 82 A.3d 1092, 1097 (Pa. Cmwlth. 2013), we affirmed the decision of the trial court which suspended the licensee's operating privilege, partially because "DOT established [the l]icensee's refusal with [the administering officer's] credible testimony and printout from a properly[ ]calibrated breathalyzer, thereby evidencing [the l]icensee's deficient sample. Accordingly, [we found] DOT met its burden." *Id*. at 1097.

Thus, although DOT is correct that we applied a more relaxed approach in *Rukavina* and placed critical import on our deference to the trial court's fact finding, our case law since then has favored strict adherence to the burden of evidentiary proof as identified in *Pappas*. Therefore, from our case law we can discern the following principle: should DOT deviate from presenting either the administering officer's testimony or a printout from a properly calibrated breathalyzer machine indicating a deficient sample, we will be constrained to find that DOT failed to carry its burden in proving a refusal occurred. As such, here, the trial court committed legal error when it held that DOT had carried its burden by presenting the testimony of Officer Layton, the arresting officer. In fact, contrary to being merely unorthodox as the trial court understood it to be, our case law indicates that Officer Layton's testimony was plainly insufficient for the purposes of establishing Licensee's purported refusal by providing an insufficient breath sample.

Moreover, whatever the effect of Licensee's Counsel's purported stipulation may be, we must agree with Licensee that it cannot now relieve DOT of its burden of proof. To reiterate, when the trial court initially sought this stipulation, the judge asked:

12

The Court: Well, based upon that, let me just -- let's just get to the point.

Will you stipulate that his testimony would be that Officer Doner, that his testimony would be that he didn't make enough of an effort to -- or he didn't make enough of an effort, therefore that constitutes a refusal?

[Licensee's Counsel]: Your [H]onor, we would stipulate that the test was offered to him and it was given to him, and it was not completed.

\* \* \*

The Court: Yeah, because Officer Doner is only pertinent and relevant to the first test and, of course, a determination has to be made there, as well, but he doesn't really add anything to the inquiry that we're here for.

[DOT's Counsel]: Only to the extent, Your Honor, that he could testify as to the indicia that [Licensee] wasn't making a good[ ]faith effort with regard to the first test.

The Court: Well, I think -- you're really stipulating?

[Licensee's Counsel]: Judge, I --

The Court: *Well, no. You're just saying that it was not completed?*

Trial Court Hearing, N.T., at 24 (emphasis added). At this point, however, the trial court did not elicit an answer from Licensee's Counsel and focused the remainder of the proceedings on Officer Layton's conduct at the hospital.

Yet, to the extent that Licensee's Counsel stipulated to anything, it was merely that the breath test was not completed. Far from altering DOT's burden, it is a necessary predicate for a dispute like this to arise in the first place. For example, the simple fact of incompletion was also necessarily true in *Valania* and *Mondini*, but it did not suffice to establish a refusal. This is because DOT's burden is not

13

satisfied by mere incompletion: it requires the testimony of the administering officer or printout evidence from a properly calibrated machine indicating deficient breath samples. The stipulation DOT now seeks to rely upon falls well short of that evidentiary burden.[3]

Herein lies the issue with simply reversing the trial court, however: while the trial court failed to obtain a stipulation from Licensee which could relieve DOT of its burden, it also prevented DOT from presenting the administering officer's testimony because of its mistaken interpretation of the Implied Consent Law.[4] Having realized its mistake upon DOT's Motion for Reconsideration, the trial court then attempted to repurpose the arresting officer's testimony. Yet, *Pappas* makes clear that this testimony was insufficient, and a plain reading of the hearing transcript indicates that Licensee's purported stipulation was inadequate for the purpose of meeting DOT's burden. Thus, the trial court has precluded us from engaging in effective appellate review by limiting the testimony and evidence presented at the hearing.[5]

---

[3] Additionally, we find it persuasive that the trial court did not rely on the purported stipulation in its November 22, 2021 opinion, instead relying on Officer Layton's testimony.

[4] As stated above, the trial court sought to expedite the proceedings because of its mistaken belief that the dispositive test in this matter was the blood test. In fact, at the time of the hearing, the trial court believed that the blood test was "the only test in question." Trial Court Hearing, N.T., at 25. The trial court repeated its mistaken understanding of the law at the close of the hearing as well: "Even though I might conclude that there weren't sufficient attempts [during the breath test], I think by offering him the [blood test], we start[ed] all over." *Id*. at 29.

[5] *See, e.g.*, Section 706 of the Judicial Code, 42 Pa. C.S. §706 ("An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.").

14

Hence, contrary to DOT's urging, we consider the test identified in *Pappas* and its progeny as the authority on DOT's evidentiary burden in establishing that a licensee refused to submit to a breath test, such that the trial court erred by considering the arresting officer's testimony as sufficient. We likewise find that Licensee did not stipulate to refusing the breath test, such that DOT was not relieved of its evidentiary burden. However, because the trial court's mistaken interpretation of the Implied Consent Law resulted in the exclusion of the administering officer's testimony, we will remand this matter to the trial court for another evidentiary hearing to obtain the administering officer's testimony and/or a printout form from a properly calibrated breathalyzer machine.

Accordingly, we vacate the trial court's November 22, 2021 order and remand this matter to the trial court for proceedings consistent with the foregoing Opinion.

MICHAEL H. WOJCIK, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Anthony Cornish,       :
       :
       Appellant   :
       :
       v.       : No. 1440 C.D. 2021
       :
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Driver Licensing    :

**O R D E R**

AND NOW, this 21st day of August, 2024, the order of the Court of Common Pleas of Westmoreland County (trial court), dated November 22, 2021, is VACATED. This matter is REMANDED to the trial court for further hearings consistent with the foregoing Opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge