Edward W. Hinderliter,        :
             Appellant      :
                         :
           v.           :
                         :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :  No. 1397 C.D. 2018
Bureau of Driver Licensing      :  Argued: June 12, 2020


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION BY
JUDGE COVEY                      FILED: July 6, 2020

        Edward W. Hinderliter (Licensee) appeals from the Montgomery County Common Pleas Court's (trial court) September 20, 2018 order denying Licensee's license suspension appeal. Licensee presents two issues for this Court's review: (1) whether Licensee's conduct constituted a refusal; and (2) whether the breath-test procedures were unreliable because the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) failed to establish that the proper procedures were followed. After review, we affirm.

        On April 10, 2017, the Pottstown Borough Police Department dispatched Officer Ronald Taylor (Officer Taylor) to the scene of a motor vehicle accident. Upon arriving, Officer Taylor approached Licensee, a 70-year-old retired schoolteacher, and noted that he was uncoordinated and confused in his conversation, and that his eyes were red and bloodshot. Licensee stated that he had been drinking alcohol that day. Licensee also told Officer Taylor that he had been at the scene for 3 hours after the accident, when in reality only 45 minutes had elapsed since the time of

the accident. Based upon his observations and Licensee's confusion, Officer Taylor placed Licensee under arrest for driving under the influence (DUI).

Officer Taylor transported Licensee to the police station for a breath test. Officer Taylor read Licensee the implied consent warnings (Form DL-26).[1] Licensee agreed to take the breath test. Officer Taylor told Licensee that he needed to blow steadily into the breathalyzer machine or the test would not work. Officer Taylor further explained that Licensee could not stop and start his breaths. However, during the first test, Licensee stopped his breath 10 times. The test was recorded as incomplete.

After Licensee's first attempt to provide a proper breath sample was unsuccessful, Officer Taylor placed a new mouthpiece on the machine, and again told Licensee he must provide a steady breath. Once again, Licensee started and stopped his breath. The result of that test was listed as a suck back error. Following these 2 tests, Officer Taylor recorded that no successful sample was provided, and marked the test as a refusal.

On June 2, 2017, DOT notified Licensee that his driver's license privileges would be suspended for a period of 18 months, effective July 7, 2017, pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii), due to his refusal to submit to chemical testing. Licensee appealed from the suspension to the trial court. A hearing was held on August 6, 2018,[2] and, on September 20, 2018, the trial court dismissed Licensee's appeal. Licensee appealed

---

[1] "The [Form] DL-26 [] contains the chemical test warnings required by Section 1547 of the Vehicle Code, [75 Pa.C.S. § 1547,] which are also known as the implied consent warnings." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013).

[2] The hearing was continued five times for reasons not disclosed in the record.

to this Court.[3]  The trial court filed its opinion on December 7, 2018.[4]

Licensee first argues that his conduct constituted a willingness to take any test and did not constitute a refusal.  Specifically, Licensee contends that the evidence in this case amounts to much more than a mere good faith effort on the part of Licensee.  Licensee claims that he was courteous and cooperative, he followed all instructions, and he did not remain silent, but rather, provided all information requested of him.  Further, Licensee asserts that he agreed to take the breath tests.  Thus, Licensee maintains that there is absolutely no record evidence that he knowingly and consciously refused the tests.

Initially, "[w]hether the conduct at issue constitutes a refusal is a question of law reviewable by this Court."  *Conrad v. Dep't of Transp., Bureau of Driver Licensing*, 226 A.3d 1045, 1051 n.4 (Pa. Cmwlth. 2020) (quoting *Lemon v. Dep't of Transp., Bureau of Driver Licensing*, 763 A.2d 534, 538 (Pa. Cmwlth. 2000)).

> Our Court has held that a licensee's failure to provide two consecutive, sufficient breath samples, absent a proven medical reason that precludes him from doing so, constitutes a refusal as a matter of law.[5]  *Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth. 2007); *see* [Section 77.24(b)(1) of DOT's Regulations,] 67 Pa. Code § 77.24(b)(1) (stating that '[t]he procedures for alcohol breath testing shall include, *at a minimum . . .* [*t*]*wo consecutive actual breath tests*, without

---

[3] "Our review is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or abused its discretion." *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 648 n.3 (Pa. Cmwlth. 2018).

[4] The trial court requested this Court to quash the appeal for Licensee's failure to request the notes of testimony.  Because the notes of testimony were, in fact, requested and filed with this Court, this Court will not address the trial court's request.

The trial court did not file an order directing Licensee to file a concise statement of the errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

[5] Licensee does not allege that a medical reason precluded him from completing the tests.

a required waiting period between the two tests') (emphasis added). Moreover, the 'failure to complete a breathalyzer test, *whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test.*' *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (*en banc*) (emphasis in original); *see Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, . . . 593 A.2d 932, 935 ([Pa. Cmwlth.] 1991) (*en banc*) ('Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal.').

*Conrad*, 226 A.3d at 1052.

Here, Officer Taylor testified:[6]

[T]he [breathalyzer] instrument was – [Licensee's] information was put in the instrument. The test starts running. What it does is purge itself to make sure there's no residual alcohol in it. It scans all the information to get ready for a printout.

I took the hose, put in a mouth[]piece, a clean, fresh mouth[]piece for [Licensee]. I explained to him what we were going to be doing. We had to do two tests. I'm going to hold the hose. I need him just to take a deep breath and blow consistently into the hose without stopping, until I tell him to stop. He had moved over. I don't know if he was sitting there yet. He was sitting next to the instrument. I moved him over closer to the hose, as we generally do, so he could reach it without having to really bend over.

Started the breath tests. He was blowing into it. And it was -- he was stopping and starting. He would blow kind of hard and lose all his air and have to stop. Take another breath, do it again, do it again.

I told him, you have to make it one steady flow or it won't give a test. It will be an incomplete test.

---

[6] Officer Taylor is a "Certified Breath Test Operator." Notes of Testimony, August 6, 2018 Ex. C-5.

4

He had -- at one point he was blowing around the mouthpiece as I was holding onto it. I could feel his breath coming around, hitting my hand.

The instrument also makes a tone, a steady tone when it's getting the proper amount of air into it. He wasn't getting a tone. And when he was, it would only last for a few seconds. It's actually probably about twelve seconds you'll have to go, to get a complete test.

So he was stopping, starting, stopping and starting. The test keeps running. And at the end of the test, if it doesn't have a complete sample, it will come up as an incomplete test[,] which this first one did.

At that point[,] I started the second test. It re-purged itself. I gave him a new mouthpiece and explained, again, before we started, that he has to go with one steady breath. You keep going or it will cancel out the test, if it happens[,] [i]t's deemed a refusal. So trying to get him to give me one steady, good test.

We started the second test, and he started blowing and then the same thing was happening. He was stopping, starting, stopping. And before it even got completed, he -- when he took in a breath, he still was holding onto the mouthpiece. And he sucked in, and gave it an automatic suck-in error, which came up on the printout slip.

So it was another incomplete test.

Notes of Testimony, August 6, 2018 (N.T.) at 16-17; *see also* N.T. Ex. C-5 (Subject Test Results). Officer Taylor expounded:

Q Officer Taylor, . . . Did [Licensee] comply with your instructions given?

A He did, except for constantly giving a steady breath. As I said, he kept starting and stopping. And I told him numerous times, to make sure he understood, he had to keep going steadily or it wasn't going to complete the test.

Q And how many times did you allow [Licensee] to attempt the breath test?

A   Well, we took two tests, but on the first one, probably about ten times, he had stopped and I had him restart.

If you have to restart it, it doesn't keep the alcohol at that level.  So it's like starting the breathing part all over again. It starts at the bottom, works its way up.

So every time, it had to start over.  And it only gives you a certain amount of time before the test times out.   The instrument stops and qualifies it as a valid test or as an insufficient sample; which is what happened in his case[].

N.T. at 17-18.

Because "the 'failure to complete a breathalyzer test, *whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test*[,]'" Licensee's failure to successfully complete the breath test constituted a *per se* refusal. *Conrad*, 226 A.3d at 1052 (quoting *Sweeney*, 804 A.2d at 687).  Accordingly, the trial court properly determined that Licensee's failure to complete the test was a refusal.

Licensee next argues that the breath test procedures were unreliable because DOT failed to establish that proper procedures were followed.  Specifically, Licensee contends: (1) Officer Taylor did not establish that he complied with the 20-minute observation requirement; (2) the DataMaster DMT which Officer Taylor used to administer the breath tests to Licensee was not suitably calibrated and operating properly; and (3) Officer Taylor did not read Form DL-26 to Licensee prior to his failure to complete either of the two breath tests.

Initially, Section 77.24 of DOT's Regulations provides, in relevant part:

(a) *Observation.*  **The person to be tested with breath test equipment shall be kept under observation by a police officer or certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test** given to the person, during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked.  Custody of the person may be transferred to another officer or certified breath test operator during the

6

20 consecutive minutes or longer period as long as the person to be tested is under observation for at least 20 consecutive minutes prior to initial administration of the alcohol breath test.

(b) *Procedures.* Alcohol breath tests shall be conducted by a certified breath test operator. **Accuracy inspection tests and calibrations conducted using breath test equipment shall be performed by a certified breath test operator**, the manufacturer or its authorized representative or a person who has received comparable training or instruction. Alcohol breath tests, accuracy inspection tests and calibrations conducted using breath test equipment shall be performed in accordance with accepted standard procedures for operation specified by the manufacturer of the equipment or comparable procedures. The procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

67 Pa. Code § 77.24(a), (b)(1) (emphasis added).

However, this Court has held:

[DOT] [i]s not required to prove that the machine was in proper working order to establish a refusal. . . . [W]hen [DOT] can establish a refusal without relying on results from the breathalyzer machine, the operability or suitability of the machine is simply not at issue.

[Further, b]y analogy to the calibration cases interpreting Section 77.24(b) of [DOT's] [R]egulations, we find that where the testimony of the administering officer alone is sufficient to support a finding that the licensee did not provide an adequate breath sample, without reliance on indicia from the breathalyzer machine itself, [DOT] need not show compliance with the observation requirements of [Section] 77.24(a) [of DOT's Regulations] in order to establish a refusal.

*Spera v. Dep't of Transp., Bureau of Driver Licensing*, 817 A.2d 1236, 1240-41 (Pa. Cmwlth. 2003) (citations and footnote omitted).

7

Licensee asserts that the video entered into evidence at the trial court hearing showed that the parties entered the room at 1:04:10 p.m. and the first test commenced at 1:18:40 p.m. Consequently, Licensee maintains that the observation period lasted for 14½ minutes rather than the required 20 minutes.

The trial court expressly concluded that "[i]n this case, Officer [Taylor[7]] testified as to [Licensee's] failure to provide the required breaths." Trial Ct. Op. at 6. Thus, because Officer Taylor's testimony was sufficient to support the finding that Licensee did not provide an adequate breath sample, without reliance on indicia from the breathalyzer machine itself, "[DOT] need not show compliance with the observation requirements of [Section] 77.24(a) [of DOT's Regulations] in order to establish a refusal." *Spera*, 817 A.2d at 1241.

Notwithstanding, the trial court also stated: "Officer [Taylor], a police officer and a certified breath test operator, testified that he had observed [Licensee] for more than [20] minutes prior to the test from the time the two first interacted until the test was taken, which testimony the [trial] court finds to be credible." Trial Ct. Op. at 7. Accordingly, the record evidence supports the trial court's conclusion that the observation period lasted the required 20 minutes.

Licensee also contends that the DataMaster DMT which Officer Taylor used to administer the breath tests to Licensee was not properly calibrated and operating properly. However, as is the case herein, "when [DOT] can establish a refusal without relying on results from the breathalyzer machine, the operability or suitability of the machine is simply not at issue." *Spera*, 817 A.2d at 1240.

---

[7] For reasons unknown, the trial court inadvertently referred to Officer Taylor as Officer Walker at the end of its opinion. Reading the opinion in context, it is clear that the trial court was referring to Officer Taylor.

8

Nevertheless, Officer Taylor testified:

Q  Officer Taylor, I'm going to ask you to identify this document marked as Commonwealth Exhibit 3.[8]  May you identify that for the Court, please.

A  This is a certificate of calibration for the breath testing device.  The --

. . . .

Q  My apologies.  What does that certificate indicate?

A  That on April 18th of 2016[,] it was calibrated to be true and accurate.  And that was the DataMaster, DMT.

number --

. . . .

THE COURT:  You were about to say the number.

THE WITNESS:  I'm sorry.  The serial number for that particular one was 500319.

N.T. at 11-12.  Officer Taylor continued:

Q  Officer Taylor, I'm going to ask you to identify this document marked as Commonwealth Exhibit 4.[9]  May you please identify it for the Court, please.

A  This is a Commonwealth Certificate of Breath Testing Device Accuracy.  As I said, they're tested every 30 days.  This was certified on March 13th of 2017[,] for the same DataMaster, Serial Number 500319.

N.T. at 14-15.  Accordingly, the record evidence supports the conclusion that the DataMaster DMT which Officer Taylor used to administer Licensee's breath tests was suitably calibrated and operating properly.

---

[8] Commonwealth Exhibit 3 was admitted into evidence.  *See* N.T. at 14.
[9] Commonwealth Exhibit 4 was admitted into evidence.  *See* N.T. at 15.

Finally, Licensee argues that DOT failed to establish that Officer Taylor read Form DL-26 to Licensee prior to his failure to complete either of the two breath tests. Specifically, Licensee contends:

> Officer Taylor testified that he read the warnings contained in [Form] DL-26 to [Licensee] and [Licensee] agreed to take the test. This evidence is supported by the video which showed [Licensee] taking the test. However, on the [Form] DL-26 introduced into evidence by [DOT], Officer Taylor signed his name that 'operator refused to sign, after being advised'. R[eproduced Record at] 18[a], 28a. The Officer was unable to provide any satisfactory evidence as to this discrepancy and as to why he never asked [Licensee] to sign it. Going further in the form; [Officer Taylor] testified that [Licensee] []refused to submit to a breath test after having been read the above warnings. . . .

Licensee Br. at 26.

> Officer Taylor testified:
>
> Q Officer[] Taylor, can you identify that document, please.
>
> . . . .
>
> THE WITNESS: This is our Chemical Test Warnings.
>
> . . . .
>
> THE COURT: Okay. What is it? What are you looking at?
>
> THE WITNESS: It's a []DOT [F]orm[] DL-26[]. And it's the Chemical Test Warnings for -- to allow people to know what their possible penalties could be if they refuse to take the test outright.
>
> BY MS. QUADRI:
>
> Q Officer Taylor, did you read this form to [Licensee]?
>
> A Yes. To the best of my knowledge, I did.
>
> Q And what was [Licensee's] response?

10

A  He agreed to take a breath test.

MS. QUADRI:  Okay.  Your Honor, at this time I w[ill] be offering into evidence []DOT's certified records marked as Commonwealth Exhibit 1.[10]  I did give a copy to opposing counsel.

N.T. at 7-9.

The Form DL-26 read to Licensee stated in relevant part:

**It is my duty as a police officer to inform you of the following**:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code[, 75 Pa.C.S. § 3802].

2. I am requesting that you submit to a chemical test of breath.

3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.  In addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code.  **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000[.00].

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

---

[10] Commonwealth Exhibit 1 was admitted into evidence.  *See* N.T. at 10.

11

**I certify that I have READ the above warnings to the operator regarding the suspension of his/her operating privilege and gave the operator an opportunity to submit to a breath test**.

Signature of Officer:        Date:

**I have been advised of the above**.

Signature of Operator:        Date:


**Operator refused to sign, after being advised**.

Signature of Officer:        Date:

N.T. Ex. C-1 (emphasis in original). Officer Taylor signed his name in both "Signature of Officer" areas, and the "Signature of Operator" area remained blank. *Id.*

Officer Taylor testified that, to the best of his knowledge, he read Licensee Form DL-26. N.T. at 9. Further, Officer Taylor signed the certification stating that he did so. N.T. Ex. C-1. The fact that Officer Taylor also signed the refusal portion is of no moment. This fact is especially true here because Licensee consented to the breath test and, thereafter, there was a deemed refusal. Because the purpose of Form DL-26 is to notify a licensee of the consequences of refusing a chemical test,[11] and Licensee did not refuse said test, this argument is moot.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[11] *See Commonwealth v. Myers*, 164 A.3d 1162, 1171 n.12 (Pa. 2017) (plurality) (The "purpose of [Section 1547(b)(2) of the Vehicle Code] 'is to entitle arrestees to the information necessary to assess the dire consequences they face if they fail to consent to chemical testing, to ensure their choice in that regard is knowing and conscious[.]'") (quoting *Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 267 (Pa. 2006) (Baer, J., dissenting)).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward W. Hinderliter,        :
              Appellant     :
                              :
             v.              :
                              :
Commonwealth of Pennsylvania,    :
Department of Transportation,      :     No. 1397 C.D. 2018
Bureau of Driver Licensing        :

## O R D E R

AND NOW, this 6th day of July, 2020, the Montgomery County Common Pleas Court's September 20, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge