**Edward C. BURKHART, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 7, 2007.

Decided Oct. 10, 2007.

---

R. Kerry Kalmbach, Kennett Square, for appellant.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: COLINS, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Edward C. Burkhart (Licensee) appeals from the April 2, 2007, order of the Court of Common Pleas of Chester County (trial court), which sustained the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) suspension of Licensee's operating privileges for refusing to submit to chemical testing. We affirm.

On September 16, 2006, State Trooper Todd McCurdy was dispatched to the scene of an auto accident involving a Volkswagen Jetta that crashed into a tree. When Trooper McCurdy arrived on the scene, Emergency Medical Services were treating Licensee, the driver of the vehicle. Trooper McCurdy detected an odor of alcoholic beverages and noticed that Licensee exhibited slurred speech. Licensee agreed to submit to field sobriety tests, which he failed. Trooper McCurdy attempted to administer a portable breath test, but Licensee did not seal his lips around the mouthpiece and did not breathe with sufficient force to yield a reading. Trooper McCurdy placed Licensee under arrest for driving under the influence of alcohol (DUI), took him to Avondale State Police barracks and read him the chemical test warnings from Form DL–26. (Trial ct. op. at 1–2.)

Trooper Thaddeus Binstead, a certified operator of the Intoximeter RBT IV breathalyzer, began to administer a chemical breath test by explaining and demonstrating to Licensee how to blow into the machine. Licensee blew into the machine very slowly, contrary to the instructions, but Licensee's effort yielded a reading. When Licensee blew into the machine for a confirmation reading, the machine dis-

played a low battery signal. Trooper Binstead asked Licensee to blow another time into the mouthpiece, and Licensee complied, but the machine once again displayed a low battery signal. Trooper Binstead then replaced the battery and explained to Licensee that changing the battery would void the initial reading and that Licensee would be required to provide two more breath samples. (Trial ct.'s 1925(b) op. at 1–3.)

After Trooper Binstead determined that the machine was operating properly, Licensee blew a very weak, slow breath into the machine, which yielded a reading of .182. When Licensee blew into the machine to obtain a confirmation reading, Licensee did not keep his lips sealed around the mouthpiece, which allowed air to escape at the sides of his mouth. The machine indicated that the breath sample was not sufficient. Trooper Binstead waited a few seconds and prompted Licensee to attempt another confirmation blow. Licensee blew into the machine, but, as before, the breath sample was not sufficient. Because Licensee failed to provide a confirmation breath sample, the test was voided. (Trial ct.'s 1925(b) op. at 3–4.)

Although the unsuccessful breath test constituted a refusal, Trooper Binstead asked Licensee if he would submit to another breath test. Licensee responded that he had blown enough and would not blow any more. (Trial ct.'s 1925(b) op. at 4.) Following Licensee's refusal, DOT suspended Licensee's operating privileges for one year. Licensee appealed to the trial court, which held a hearing on the matter.

At the hearing, DOT presented the testimony of Troopers McCurdy and Binstead. On direct examination, Trooper Binstead testified that the machine was operating properly after he replaced the battery, (R.R. at 28a), and that, when he instructed Licensee to provide a confirmation sample,

Licensee stopped blowing at times and did not keep a tight seal around the mouthpiece, (R.R. at 29a–30a). DOT also offered into evidence the annual and monthly calibration certificates for the breathalyzer used to test Licensee. The documents were dated September 4, 2006, twelve days before Licensee's breath test. (R.R. at 32a, 45a–47a.) On cross-examination, Trooper Binstead testified:

Q Do you have to [recalibrate] or reset the machine in any way [when the machine shuts down because of a low battery]?

A Not that I know of, no.

Q You don't really know?

A I'm not the ... the mechanic. I am qualified to perform the test. I'm not the maintenance officer.

(R.R. at 34a–35a.)

Licensee presented the testimony of his wife, who was present at the scene of the accident and who had a conversation with the arresting officer. Licensee's wife testified, "Then [the officer] asked ... [if I would] be coming to pick him up and I said yes, do you want me to come to Avondale? And he said no ... we'll have to take him to Jennersville or Kennett because our machine is broken." (R.R. at 39a.) Licensee testified on his own behalf that: (1) he was trying to blow properly into the machine; (2) he never refused to submit to the test; and (3) when he began to ask questions about the need to re-take the test so often, another officer in the back of the room said that Licensee was being insubordinate and ended the testing. (R.R. at 40a–41a.)

After considering the evidence, the trial court concluded that, even if Licensee made a good faith effort to provide sufficient breath samples, Licensee refused to

submit to chemical testing.[1] Licensee filed an appeal, and, in his Statement of Matters Complained of on Appeal, Licensee asserted, "The Court erred in failing to find that the machine used to administer the test was not defective." (R.R. at 60a.) In a subsequent opinion, the trial court noted that the machine was calibrated just two weeks before Licensee's test, and Licensee did not present competent evidence from a qualified witness to show that replacing the battery affected those calibrations. (Trial ct.'s 1925(b) op. at 4–5, 7; R.R. at 65a–66a, 68a.)

■ Before this court,[2] Licensee argues that he presented the following undisputed evidence to establish that the machine was defective: (1) the arresting officer told Licensee's wife that the Avondale machine was broken; (2) the machine actually malfunctioned because of a low battery; and (3) the machine operator did not know whether the maintenance officer needed to reset the machine after the battery was replaced. Licensee contends that, because the machine was disabled by a low battery, the trooper's only recourse was to remove the machine from service and request that Licensee submit to a blood or urine test. We disagree that the evidence presented by Licensee establishes that the low battery disabled the machine.

■ In order to sustain a license suspension, DOT must prove, *inter alia*, that the licensee refused to submit to chemical testing. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999). Failure to supply adequate breath samples during the administration of a breath test is a deemed refusal. *Id.* Once DOT meets its burden in this regard, the burden shifts to the licensee to establish a reasonable explanation for the licensee's failure, i.e., why the refusal was not knowing or conscious. *Id.*

Here, DOT met its burden of proving that Licensee failed to supply adequate breath samples during the administration of a breath test. Licensee then attempted to establish that the breathalyzer was defective, and should have been removed from service, after the machine displayed a low battery signal. However, DOT regulations do not require that a breathalyzer be removed from service after its battery has been replaced.[3] Moreover, Licensee did not present evidence from a qualified witness to establish that replacing the battery of a breathalyzer alters the machine's calibrations or affects the ability to supply adequate breath samples.[4]

Accordingly, we affirm.

1. The trial court found it unnecessary to make credibility determinations to resolve the conflict in the testimony of Licensee and Trooper Binstead as to whether Licensee made a good faith effort to provide sufficient breath samples. *See Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa. Cmwlth. 484, 593 A.2d 932 (stating that the failure to complete a breathalyzer test, even when a good faith effort is made to provide sufficient breath samples, constitutes a refusal to submit to the test), *appeal denied*, 529 Pa. 625, 600 A.2d 541 (1991).

2. Although our scope of review is generally limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court commit-

ted an error of law or an abuse of discretion, the issue of whether a licensee refused a chemical test is a question of law, subject to plenary review by an appellate court. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999).

3. A breathalyzer is to be removed from service only when: (1) the difference between the results of two actual alcohol breath tests exceeds the specified parameter; or (2) a simulator test yields unacceptable results. 67 Pa.Code § 77.24(b)(2).

4. With respect to the testimony of Licensee's wife that, according to the arresting officer, the Avondale machine was broken, Trooper

## ORDER

AND NOW, this 10th day of October, 2007, the order of the Court of Common Pleas of Chester County, dated April 2, 2007, is hereby affirmed.

Binstead testified that the Avondale machine was operating properly after he replaced the battery.