### Daniel Charles RILEY

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2008.

Decided April 14, 2008.

---

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) that reversed DOT's action in suspending the operating privileges of Daniel Charles Riley (Licensee) for refusing to submit to chemical testing. We reverse the order of the trial court and reinstate DOT's suspension.

A de novo hearing was held on November 30, 2006. Officer David Rinehimer testified that on August 11, 2006, at approximately 2:14 a.m., he observed Licensee's vehicle parked on the southbound side of Main Street. The engine was running, the headlights were on, music was blaring, and Licensee was behind the wheel sleeping or passed out. Officer Rinehimer explained that he attempted to wake Licensee by opening the door, shining the flashlight in his face, and yelling at him loudly. Licensee was eventually awakened and Officer Rinehimer observed the odor of alcohol. Officer Rinehimer asked Licensee to step out of the vehicle. According to Officer Rinehimer, as Licensee exited the vehicle, he had glassy eyes, his speech was slurred, and he bumped into both the officer and the rear quarter panel of the automobile as he walked. Officer Rinehimer explained Licensee failed his field sobriety tests. Thereafter, Officer Rinehimer placed Licensee under arrest and took him into custody.

Officer Rinehimer subsequently attempted to administer a breath test using the BAC DataMaster. He explained that the machine makes a beeping noise when it is waiting for a breath sample. According to Officer Rinehimer, when the device is receiving a breath sample, it makes a steady tone. He testified that when Licensee tried to give a breath sample, the breathalyzer would intermittently go on and off and Licensee was making faces as he blew into it. Officer Rinehimer stated that he interrupted the test to make sure there was no plastic or other foreign object in the mouthpiece interfering with the device. He replaced the mouthpiece and allowed Licensee to continue. The device timed out and Officer Rinehimer asked Licensee if he would like to try again. Licensee replied affirmatively but again failed to supply a proper sample. Officer Rinehimer opined that rather than breathe into the device, Licensee was breathing out his nose. Officer Rinehimer stated that the device was in working order.

On cross-examination, the following transaction took place:

Q. As a certified operator [of the BAC DataMaster], are you trained to check for plastic obstructions if the test is not completed the first time?

A. I would just– as a common sense thing. Each piece of—each mouth instrument comes in a hermetically sealed piece of plastic so there could be a possibility, I guess, that there would be a piece of plastic in it. So after he tried blowing into it– for a minute or so he wasn't blowing or was intermittently blowing, I popped off the instrument to make sure there was nothing in it and put it back in to make sure there was no obstructions.

Q. And then you readministered the test with the same instrument that you had just dismantled and put back together?

A. Not really dismantled. I was looking for plastic.

Q. You took it apart?

A. Yes, I guess.

Q. Is that commonplace for you to take apart the device and then put it back together and administer the test with the same device?

A. For the second sample, yes. You take the mouthpiece– you take it off with the piece of plastic you unwrapped it from and throw that mouthpiece away and put a new one on.

(R.R. at 24a).

Licensee testified that he complied with Officer Rinehimer's instructions. He stated that Officer Rinehimer repeatedly yelled at him to blow into the breathalyzer. According to Licensee, at one point he

heard a steady tone and Officer Rinehimer said "[g]ood, good, good; keep blowing, keep blowing." (R.R. at 27). Licensee stated that regardless of whether his breath sample was sufficient or not, he did blow into the equipment. He conceded, however, that he failed to provide a valid sample. He denied blowing through his nose. Licensee verified that he is on the medication Lexapro for depression and anxiety. He added that he suffers from anxiety attacks and shortness of breath and that he had trouble breathing during the event in question. Licensee agreed that he had consumed alcohol in a bar, left and got in his car and turned it and the headlights on. He stated he did not move the vehicle. Licensee explained he knew he was not able to drive and simply was sitting in his seat.

Based on the evidence presented, the trial court held that DOT failed to establish that Licensee refused the breathalyzer test and that his license should be suspended. The trial court stated that "[t]here is no evidence of record that the instrument was in working condition because ... the instrument was taken apart and put back together." (R.R. at 59a).

The trial court added "[i]t can not (sic) be considered a refusal ... when the [licensee] attempts to comply with the breathalyzer test but can not (sic) because the instrument was not properly constructed." (R.R. at 60a). It further stated that Officer Rinehimer failed to consider Licensee's susceptibility to anxiety attacks and the possibility that such an attack may have contributed to his inability to blow a sufficient breath sample. Alternatively, the trial court reasoned that Officer Rinehimer did not have reasonable grounds to believe that Licensee was operating a motor vehicle while under the influence of alcohol. This appeal followed.[1]

■ Prior to addressing DOT's specific arguments, we note that to sustain a suspension of operating privileges DOT must establish that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.[2] *Banner v. Depart-*

---

1. This Court's standard of review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Mondini v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1192 (Pa. Cmwlth.2005).

2. The Implied Consent Law set forth in Section 1547 of the Vehicle Code provides as follows:

(a) GENERAL RULE.—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood

or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section ... 3802 (relating to driving under influence of alcohol or controlled substance) ...

(b) SUSPENSION FOR REFUSAL.—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

...

(2) It shall be the duty of the police officer to inform the person that:

ment of Transportation, Bureau of Driver Licensing, 558 Pa. 439, 737 A.2d 1203 (1999). *See also Mondini v. Department of Transportation, Bureau of Driver Licensing,* 875 A.2d 1192 (Pa.Cmwlth.2005). Prongs (1) and (3) of this four prong test are at issue in the matter before us.

First, DOT contends that the trial court erred in finding Officer Rinehimer did not have reasonable grounds to believe that Licensee was operating a motor vehicle while under the influence of alcohol. We agree.

■ The standard of reasonable grounds to support a license suspension is not the same as probable cause required for a criminal prosecution. *Vinansky v. Department of Transportation, Bureau of Driver Licensing,* 665 A.2d 860 (Pa. Cmwlth.1995). Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor. *DiPaolo v. Department of Transportation, Bureau of Driver Licensing,* 700 A.2d 569 (Pa.Cmwlth.1997). In determining whether an officer had reasonable grounds to believe that a motorist was in "actual physical control" of a vehicle, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police. *Commonwealth v. Wolen,* 546 Pa. 448, 450, 685 A.2d 1384, 1385 (1996). Simply because other inferences are possible, that factor alone does not render the arresting officer's belief unreasonable. *Polinsky v. Department of Transporta-*

tion, 131 Pa.Cmwlth. 83, 569 A.2d 425 (1990). Whether reasonable grounds exist is a question of law reviewable by this court on a case by case basis. *Department of Transportation, Bureau of Driver Licensing v. Malizio,* 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

■ Viewing the totality of the circumstances, we hold that the information available to the officer prior to his request for chemical testing meets the minimum required evidence to support a finding of reasonable grounds to believe that Licensee was operating or was in actual physical control of the movement of his vehicle while under influence of alcohol. This Court notes that in *Vinansky,* actual physical control was found where the licensee was discovered slumped over the steering wheel of a truck parked in a parking lot behind a fire department social hall. The vehicle's engine was running and its brake lights were on. In *Department of Transportation, Bureau of Driver Licensing v. Paige,* 156 Pa.Cmwlth. 600, 628 A.2d 917 (1993), actual physical control was found where the licensee was asleep, slumped over the steering wheel with the key in the ignition. The vehicle was parked on a city street with its parking lights on. The officer in *Polinsky* was found to have had reasonable grounds to believe that the licensee was in actual physical control of the vehicle when she was found asleep behind the wheel of her vehicle, parked adjacent to a fast food restaurant pick-up window. The headlights of the car were on and the standard transmission was in gear, although the engine was not running.

The facts in this case are nearly identical to the facts presented in *Vinansky, Paige,* and *Polinsky.* Licensee was dis-

---

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing ...

75 Pa.C.S. § 1547.

covered passed out in the driver's seat of his automobile parked on the side of the road with the engine and headlights on. Moreover, Licensee performed poorly during the field sobriety tests. These facts were not refuted. Given these facts, Officer Rinehimer most certainly could have concluded that Licensee operated the vehicle or was in actual physical control of the vehicle while intoxicated. We reiterate that, per *Polinsky,* that while another inference may be made, that does not render Officer Rinehimer's belief any less reasonable.[3]

DOT further argues that there is not substantial evidence of record to support a finding that the BAC DataMaster was not in working condition and, therefore, the trial court erred in finding Licensee could not be considered to have refused to submit to chemical testing. We agree.

■ A refusal is supported by substantial evidence where the breathalyzer administrator testifies that the licensee did not provide sufficient breath. *Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504 (Pa. Cmwlth.1996). If DOT establishes refusal by utilizing the testimony of the administrating officer, it need not prove that the machine was in proper working condition at the time of the test. That is, once DOT establishes refusal, the operability or suitability of the breathalyzer is not at issue. *Id.* at 508; *See also Spera v. Department of Transportation, Bureau of Driver Licensing,* 817 A.2d 1236 (Pa.Cmwlth.2003).

This Court nonetheless recognizes that the trial court's opinion did not did not necessarily bifurcate the issues of (1) whether licensee gave sufficient breath and, if necessary (2) whether the BAC DataMaster was in working order. Rather, the trial court appears to have put the proverbial cart before the horse and concluded that the breathalyzer was not in working order and, as such, Licensee cannot be considered to have refused a chemical test by failing to provide a sufficient breath sample. Nonetheless, we are capable of exercising effective appellate review.

A similar situation to the facts before us appeared in *Burkhart v. Department of Transportation, Bureau of Driver Licensing,* 934 A.2d 161 (Pa.Cmwlth.2007). The licensee, in *Burkhart,* was attempting to give a breath sample for an Intoximeter RBT IV breathalyzer. When he blew into the machine for a confirmation reading, the device displayed a low battery signal. The arresting officer then replaced the battery and explained to the licensee that changing the battery would void the initial reading and that the licensee would be required to provide two more breath samples. After the officer determined that the machine was operating properly, the licensee blew a weak, slow breath into the machine that yielded a reading of .182. When the licensee blew into the machine to obtain a confirmation reading, he did not keep his lips sealed around the mouthpiece, allowing air to escape the sides of his mouth. The breathalyzer indicated that the breath sample was not sufficient. The officer waited a few seconds and requested the licensee to attempt another confirmation blow. The licensee again failed to give a sufficient test sample and the test was voided. The licensee's unsuc-

---

3. It is of some interest that the case cited by the trial court to support its determination that Officer Rinehimer lacked reasonable grounds to believe Licensee operated or had actual physical control his vehicle while under influence of alcohol, *Department of Trans-* *portation, Bureau of Driver Licensing v. Firestone,* 111 Pa.Cmwlth. 498, 534 A.2d 556 (1987), indicates that the test as to whether reasonable grounds existed is not very demanding.

cessful breath test constituted a refusal and his license was suspended.

On appeal to this Court, we rejected the licensee's argument that the low battery disabled the machine requiring it to be removed from service. We reiterated that failure to supply adequate breath samples during the administration of a breath test is deemed a refusal. *Id.* at 164. We further explained that once DOT meets its burden in this regard, *the burden shifts to the licensee to establish a reasonable explanation for his failure.* We stated that DOT met its burden of establishing that the licensee failed to provide an adequate breath sample. Moreover, this Court found that the licensee failed to establish that the breathalyzer was defective and should have been removed from service after the machine displayed a low battery signal. In so finding, we pointed out that pursuant to 67 Pa.Code § 77.24(b)(2), a breathalyzer is to be removed from service only when (1) the difference between the results of two actual alcohol breath tests exceeds a specified parameter or (2) a simulator test yields unacceptable results. We stated, however, that DOT regulations do not require that a breathalyzer be removed from service after its battery has been replaced. We added that licensee failed to present evidence from a qualified witness to establish that replacing the battery of a breathalyzer alters the machine's calibrations or affects the ability to supply adequate breath samples. *Id.* at 164.

■ As noted, Officer Rinehimer testified that Licensee failed to provide a proper breath sample. Licensee conceded as much. Thus, pursuant to *Burkhart,* the burden was on Licensee to establish a reasonable basis for his failure.

A fair reading of the testimony in the matter before us does not reveal that the BAC DataMaster "was taken apart and put back together" as suggested by the trial court. Officer Rinehimer's testimony indicated merely that he observed Licensee was having difficulty blowing into the device and that he detached the mouthpiece to confirm there was no obstruction blocking airflow. Upon detecting no obstruction he replaced the mouthpiece and gave Licensee the opportunity to attempt give another breath sample. While Licensee's counsel, on cross-examination, may have alluded to the fact that Officer Rinehimer "dismantled" the breathalyzer suggesting something far more complex, such a reference was merely an attempt to put words in Officer Rinehimer's mouth.[4]

■ Moreover, as with the battery replacement in *Burkhart,* removing and replacing a mouthpiece does not mandate that the breathalyzer must be removed from service or indicate that the device was no longer in working order. We note that 67 Pa.Code § 77.24(b)(2) does not list such action as an event requiring the breathalyzer to be removed from service. Further, Licensee did not present evidence from a qualified witness to establish that detaching and replacing the mouthpiece alters the machine's calibrations or affects the ability to supply adequate breath samples. Consequently, there is not substantial evidence to support the trial court's finding that the BAC DataMaster was not in working order.[5] Because Licensee pre-

---

4. We do not hesitate to point out that Officer Rinehimer testified that each mouthpiece comes in hermetically sealed package. He added that it is commonplace to remove a mouthpiece from the breathalyzer machine and replace it with a new one in order to collect a new breath sample.

5. We acknowledge that the trial court did not have the benefit of *Burkhart* at the time it issued its opinion. We reiterate, however,

sented no evidence to meet his burden to establish a reasonable explanation for his failure to provide a sufficient breath sample, we must reverse the trial court's order and reinstate DOT's suspension of Licensee's driver's license.[6]

## ORDER

AND NOW, this 14th day of April, 2008, the Order of the Court of Common Pleas of Luzerne County is reversed and the driver's license suspension is reinstated.

that 67 Pa.Code. § 77.24(b)(2) establishes when a breathalyzer is to be removed from service. The removal and subsequent reattachment of a mouthpiece in order to inspect for an obstruction is not an enumerated basis.

6. We recognize that the trial court provided further support for its determination that DOT failed to meet its burden to suspend Licensee's operating privileges by referencing Officer Rinehimer's failure to take Licensee's propensity for anxiety attacks into consideration as a basis for Licensee's inability to blow a sufficient breath sample. This statement, however, ignores the fact the failure to complete a breathalyzer test, whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test. *Sweeney v. Department of Transportation, Bureau of Driver Licensing,* 804 A.2d 685 (Pa.Cmwlth. 2002). Further, a failure to supply a sufficient breath sample shifts the burden to the licensee to prove by competent medical evidence that he was physically unable to take the test. *Mueller v. Department of Transportation, Bureau of Driver Licensing,* 657 A.2d 90 (Pa.Cmwlth.1995). No medical evidence was presented. Thus, any medical condition that may have affected Licensee's performance during the breathalyzer test cannot be considered.