IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Fullam,                          :
                    Appellant           :
                                        :    No.  124 C.D. 2020
            v.                          :
                                        :    Submitted:  August 28, 2020
Commonwealth of Pennsylvania            :
Department of Transportation,           :
Bureau of Driver Licensing              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED:  March 30, 2021


            Daniel Fullam (Fullam) appeals from the December 16, 2019 order of the
Court of Common Pleas of Montgomery County (trial court), which denied his appeal
from the notice of the Pennsylvania Department of Transportation (Department),
Bureau of Driver Licensing (Bureau), that suspended his driver's license due to his
alleged refusal to submit to a chemical breathalyzer test in relation to his arrest for
driving under the influence.  Upon review, we reverse.

            By letter mailed August 21, 2017, the Bureau sent Fullam official notice
that his driving privilege would be suspended under section 1547(b)(1)(i) of the

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

Vehicle Code, 75 Pa.C.S. §1547(b)(1)(i)[2] because he allegedly refused a chemical breathalyzer test on August 6, 2017. (Original Record (O.R.) Item No. 0.) Fullam appealed the notice of suspension to the trial court on September 18, 2017. *Id.* A hearing was scheduled for December 18, 2017. (O.R. Item No. 1.) However, the hearing was continued numerous times and was eventually held on December 16, 2019. (Reproduced Record (R.R.) at 2a.)

At the hearing, Pennsylvania State Police (PSP) Trooper Anthony Giarrizzo (Trooper Giarrizzo) testified on behalf of the Bureau as follows. (Notes of Testimony (N.T.) at 8, R.R. at 10a.) Trooper Giarrizzo was working on the night of August 5, 2017, at a sobriety checkpoint in Montgomery County, where he encountered Fullam. (N.T. at 9.) Trooper Giarrizzo detected the smell of marijuana emanating from Fullam's vehicle, noticed the smell of alcohol on Fullam's breath, and observed that his eyes were glassy and bloodshot. *Id.* at 9-10. Trooper Giarrizzo administered the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test, observing signs of impairment during each test. *Id.* at 10. He also administered a preliminary breath test which returned a blood alcohol concentration (BAC) reading of .116. *Id.* Believing that Fullam was intoxicated, Trooper Giarrizzo arrested him for driving under the influence and transported him to the PSP Skippack Barracks for additional chemical testing. *Id.* at 11. Trooper Giarrizzo explained that Fullam was cooperative, answered questions, and agreed to undergo field sobriety tests and return to the PSP barracks without issue. *Id.* at 14. Trooper Giarrizzo testified that Fullam

---

[2] This section provides, in relevant part, "that if any person placed under arrest for driving under the influence of alcohol 'is requested to submit to chemical testing and refuses to do so, . . . the department shall suspend the operating privilege of the person . . . for a period of 12 months.'" *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946, 947 (Pa. Cmwlth. 2011) (quoting 75 Pa.C.S. §1547(b)(1)(i)).

consented to a breathalyzer test but that it was determined by former Trooper Dean Wright (Trooper Wright) to be a refusal. *Id*. at 13.

Next, Trooper Wright testified as follows. Trooper Wright was employed with the PSP for 25 years, was stationed at the Skippack Barracks, and was working there on the night of August 5, 2017. (N.T. at 16.) Trooper Wright was employed as a certified intoxilyzer operator and maintenance officer. *Id*. at 16-17. On August 5, 2017, he used an accurately calibrated DataMaster breathalyzer machine to perform a breath analysis test on Fullam. *Id*. at 17-18. Trooper Wright told Fullam that he would have to produce two separate breath samples and explained to Fullam how to properly give a breath sample. *Id*. at 19. Trooper Wright explained that Fullam's first breath registered on the machine properly, but it appeared that his second breath failed to register as a proper sample. *Id*. at 19.

Trooper Wright next examined a result ticket that was printed from the DataMaster (Result Ticket), which depicted the results of Fullam's test both numerically and graphically. (N.T. at 20, R.R. at 82a.) Trooper Wright explained that the two lines on the graph represented the breaths Fullam blew into the DataMaster and that his first breath registered as a solid line, yielding a BAC reading of .113. (N.T. at 20.) However, he explained that the second line, a dotted one, was the result of Fullam failing to give a proper breath sample. *Id*. at 20-21. Yet, Trooper Wright could not recall what Fullam was doing during the second sampling. *Id*. at 21-22. Specifically, Trooper Wright explained as follows:

> Okay. If the first sample was good, I'm going to tell you it was good. Okay? And I'm going to tell you typically -- I ran hundreds of tests. Not thousands, hundreds -- give me the same as you gave me the first time. This is any person that comes through that I'm giving the test to, Your Honor. Okay? You gave me a good first sample, let's do it a second

3

time, because if you don't do it a second time, you can disable this instrument. And if you disable this instrument that means it's going to be out of service until I put it back up. Since I was the maintenance officer, that's why Skippack had me run all of their testing for DUI checkpoints.

So, he must have not been giving a proper sample the second time. And I'm going to allow you to do it once, okay, you know, take a deep breath, you're going to blow like you're blowing up a balloon. Do it like the first time. He must have not [done] it like the first time. So, what I have to do, and what you're taught, Your Honor, is you abort the test before he disabled the instrument.

*Id.* at 22-23. Thus, instead of having the machine disabled, Trooper Wright aborted the test and considered the test to be a refusal by Fullam. *Id.* at 23.

On cross-examination, Trooper Wright testified that he had a vague independent recollection of Fullam's test. *Id.* at 24. Therefore, he explained that his direct testimony explained his normal procedure and what he would typically do in administering a breath test. *Id.* He further explained that he had no independent recollection that Fullam "demonstrated a demeanor or symptoms that he was intentionally trying not to give a proper breath sample." *Id.* at 26. Following Trooper Wright's testimony, the Bureau rested.

Next, Fullam testified, and explained that he provided both the first and second breath sample in the DataMaster to the best of his ability and did not intentionally or purposefully fail to give an adequate sample. *Id.* at 29. Fullam testified that he was cooperative with the officers from the time he was stopped on the road to when he was taken to the Skippack Barracks. *Id.* at 29-30.

Next, Ronald Henson, Ph.D., testified on Fullam's behalf. Dr. Henson was accepted by the court as an expert in breathalyzers without objection. *Id.* at 36. Dr. Henson testified that he was familiar with the DataMaster machine and reviewed

4

the DataMaster records in the instant case. *Id*. at 37. Dr. Henson reviewed the same Result Ticket as Trooper Wright. *Id*. Dr. Henson testified, that based on his experience, he did not believe Fullam purposefully failed to provide a sufficient breath sample. To the contrary, he explained that

> at the bottom of [the Result Ticket] it says, "blank error." A blank error has nothing to do with an individual blowing or attempting to blow into a device. That error would be called an invalid sample, perhaps, but a blank error is simply restricted to the machine or the device itself in that the chamber is not able to clear itself to purge all of the ethanol out of the chamber to get it to a .003 or less to continue with testing. So that is a machine or device error issue, nothing to do with an individual.

*Id*. at 38-39. Dr. Henson explained that if Fullam did not give a proper breath sample, the Result Ticket would have been "different in profile and it would likely [have said] either incomplete test or invalid sample." *Id*. at 39. He explained that the dotted line on the Result Ticket, which represented the airflow, was generally consistent with an individual attempting to give proper air flow. *Id*. at 42. Nevertheless, Dr. Henson ultimately concluded that the DataMaster encountered a blank error, and it appeared from the Result Ticket that Fullam was attempting, to the best of his ability, to register a proper breath example. *Id*. at 44-45.

On December 16, 2019, the trial court denied Fullam's appeal and reinstated his suspension. (O.R. Item No. 14.). Fullam sought reconsideration of the trial court's order, which was denied on January 6, 2020. (O.R. Item No. 17.) Fullam appealed to this Court.

The trial court issued an opinion dated March 18, 2020, in support of its December 16, 2019 order. (Trial Ct. Op. at 1.) The trial court noted that on August 5, 2017, Fullam's vehicle was stopped, and Trooper Giarrizzo noticed signs that Fullam

5

was under the influence of alcohol. *Id.* The trial court also noted that Fullam was arrested for driving under the influence and was transported to the Skippack Barracks to undergo a breath test on the DataMaster machine, to which he consented. *Id.* The trial court found that Trooper Wright administered the test on the DataMaster machine, which was accurately calibrated. *Id.*

The trial court concluded that, based on Trooper Wright's testimony about Fullam's failure to give a proper breath sample and the Result Ticket, a refusal had occurred. *Id.* The trial court stated Fullam failed to present evidence that he was incapable of following Trooper Wright's instructions or to provide a sufficient breath sample. (Trial Ct. Op. at 2.) The trial court held that, under Pennsylvania law the failure to provide a required breath sample constitutes a refusal. *Id.* The trial court found "the testimony of the two Troopers [(Giarrizzo and Wright)] to be credible" and it also found "the testimony of [Fullam's] expert [(Dr. Henson)] was not credible or persuasive." *Id.* In sum, the court concluded that Fullam "did not follow [Trooper Wright's] instructions and provide a proper breath sample," and therefore denied the license suspension appeal. *Id.*

## Discussion

On appeal,[3] Fullam raises two issues for this Court's review. First, whether the trial court's conclusion that he refused a chemical test was supported by

---

[3] The issue of whether a licensee refused to submit to a chemical test is a question of law subject to plenary review by this Court. *Mueller v. Department of Transportation, Bureau of Driver Licensing,* 657 A.2d 90, 93 (Pa. Cmwlth. 1995). Our scope of review is limited to "determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *McCloskey v. Department of Transportation, Bureau of Driver Licensing,* 722 A.2d 1159, 1161 (Pa. Cmwlth. 1999).

the evidence. Second, whether the trial court erred in allowing Trooper Wright to testify to his assumptions as to whether Fullam refused the test.

As to the first issue, Fullam maintains that the Bureau failed to carry its burden to establish that Fullam refused the test. Fullam analogizes this case to *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761 (Pa. Cmwlth. 2008), where a licensee provided two breath samples, but was considered to have refused the test after giving the second sample. Fullam explains that, in *Reinhart*, the breathalyzer machine shut down and printed out a slip indicating a sample deviation, and the officer determined this constituted a refusal by the licensee. We held the facts did not establish a refusal because the sample deviation slip indicated a malfunction by the machine, and it was erroneous for the officer to fail to allow the licensee to take a second test following the malfunction.

Fullam argues that this case is also analogous to *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa. Cmwlth. 2011). There, Fullam argues, we affirmed a lower court's determination that a single failed attempt to perform a breath test did not constitute a refusal where the driver's improper breath sample was attributable to the stress of her first arrest. He argues that our conclusion rested on the fact that there was no evidence that the licensee was intentionally attempting to interfere with the test, but to the contrary was cooperative.

Fullam argues that the trial court lacked a factual basis to conclude that he refused the test because the testimony established that he was cooperative, and the second breath he attempted to give the machine did not register due to a machine error. Further, Fullam argues that Trooper Wright failed to testify to any of Fullam's actions showing he was intentionally or deliberately attempting to avoid providing a sufficient sample. In Fullam's view, Trooper Wright's candid acknowledgement that he had a

7

vague recollection of Fullam's test bolsters the conclusion that he did not refuse the test.

Moreover, Fullam argues that Trooper Wright's testimony regarding the solid and dotted line on the Result Ticket is belied by the record because the legend on Result Ticket indicates that the solid line is the "Alcohol" level of one breath, and the dotted line is the "Flow Rate" of the same – meaning, they are not separate breaths but two different measurements of the same one. This is the inverse of Trooper Wright's contention that each line represents a different breath sample.

As to the second issue, Fullam argues that the trial court erred in allowing Trooper Wright to testify in the form of his assumptions. Again, Fullam points to Trooper Wright's testimony that he could not recall the specifics of Fullam's test, but that he was testifying about his assumptions of what happened during Fullam's test. Fullam argues that under Pennsylvania Rule of Evidence (Pa.R.E.) 602(a), a witness is forbidden to testify to a matter unless evidence is presented sufficient to support a finding that the witness has personal knowledge of the matter. Pa.R.E. 602(a). He also argues that under Rule 701 of the Pennsylvania Rules of Evidence, a lay witness's testimony to his or her opinions or inferences is limited to those opinions or inferences "which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony[,] or the determination of a fact in issue. . . ." Pa.R.E. 701. Fullam argues that at the time of Trooper Wright's testimony, he had no present knowledge of the circumstances surrounding the breath tests, and was not qualified as an expert. Thus, Fullam argues, Trooper Wright's testimony was limited under Pa.R.E. 701 to the inferences rationally related to his perceptions—none of which he could recall. As such, Fullam asserts that Trooper Wright's testimony was inadmissible.

8

In opposition, the Bureau argues that the trial court was correct in holding that Fullam refused to submit to a chemical test, and that the trial court did not abuse its discretion in allowing Trooper Wright to testify to his normal practice in administering breath tests.

First, the Bureau maintains it met its burden to establish that Fullam refused the test. The Bureau argues that under Pennsylvania law, anything less than unqualified and unequivocal assent constitutes a refusal, and that officers need only provide a single opportunity to provide two sufficient breaths. Accordingly, the Bureau argues that the trial court's conclusion that Fullam refused the test was supported by the evidence.

The Bureau argues that Trooper Wright's testimony regarding the Result Ticket was correct, and that the second dotted line represented the second breath, which was determined to be a refusal. Additionally, the Bureau argues that Trooper Giarrizzo's statement that he signed the DL-26A form determining that the test was a refusal, supports the conclusion that Fullam refused the test.[4] In sum, the Bureau argues that the trial court found Trooper Wright's testimony that Fullam refused the test to be credible and persuasive and Fullam otherwise failed to present evidence that he was incapable of providing a sufficient sample on the second breath.

As to the testimony of Trooper Wright, the Bureau maintains that he testified to his habit, which was admissible. The Bureau argues that Trooper Wright testified to what he would normally do in administering a breath test, and what his usual process and procedure was.

---

[4] The Bureau also maintains that Trooper Giarrizzo's testimony that "[he] was informed by [Trooper Wright] that it was a refusal due to the breath test sample. [Fullam] did not complete it as instructed," is not hearsay. (Bureau's Br. at 20.) This assertion is not challenged on appeal. However, consistent with note 6, *infra*, we need not discuss this issue.

9

**Whether the Bureau Met its Burden to Prove Fullam Refused the Test**

Where the Bureau seeks to sustain a license suspension under what is commonly known as the Implied Consent Law, Section 1547(b) of the Vehicle Code, 75 Pa.C.S. §1547(b), the Bureau must establish that "the driver (1) was arrested for driving under the influence of alcohol, (2) was asked to submit to the breathalyzer test, (3) refused to do so, and (4) was specifically warned that a refusal would result in the suspension of his driver's license." *Mondini v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1192, 1194-95 (Pa. Cmwlth. 2005). As to these elements, Fullam only challenges element three, that the Bureau failed to prove that he refused the test. The Bureau "bears the burden of establishing a licensee failed to supply sufficient breath into the breathalyzer." *Reinhart*, 954 A.2d at 766. "Any response from a licensee that is less than an unqualified, unequivocal assent to a chemical test constitutes a refusal. . . A licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal to submit to testing." *Bomba*, 28 A.3d at 949 (citing *Hudson v. Department of Transportation, Bureau of Driver Licensing,* 830 A.2d 594, 599 (Pa. Cmwlth. 2003)). The question of whether a licensee has refused to submit to a chemical test is a "legal one, based on the facts found by the trial court." *Factor v. Department of Transportation, Bureau of Driver Licensing*, 199 A.3d 492, 496 (Pa. Cmwlth. 2018) (quoting *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015)). "The question of refusal by a licensee to consent to chemical testing 'turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing.'" *Factor*, 199 A.3d at 496 (quoting *Nardone*, 130 A.3d at 749.)

10

Our decision in *Bomba* is instructive. In that case, the licensee was arrested for driving under the influence, and was taken to the police station to perform a chemical breath test. 28 A.3d at 948. The licensee attempted to give one breath sample, which was insufficient. *Id*. The officer administering the test explained that the licensee gave a series of short breaths rather than one continuous breath. *Id*. After the licensee was unable to provide a sufficient sample after two minutes, the machine prompted the officer to report whether a refusal occurred, and the officer indicated that one had. *Id*. The officer admitted that the licensee asked to retake the test but explained that she was only required to give one test. *Id*.

The licensee testified that she tried as best as she could to provide a sufficient breath. *Id*. She explained, however, that she was unable to provide a sufficient sample because she was very upset by her arrest. *Id*. After she learned she was considered to have refused the test she immediately asked for another chance to do the test, which the officer refused. *Id*. The licensee appealed to the trial court, which sustained her appeal on the grounds that the licensee's "unequivocal and unqualified consent to take the breath test, her subsequent inability to perform it properly, despite [attempts] to do so and her immediate request to retake the breath test, [did] not amount to a refusal under these circumstances." *Id*. at 949. The Bureau appealed to this Court. *Id*.

Before this Court the Bureau argued that it was not required to give a second test. *Id*. However, we explained there was no evidence that the licensee employed stall tactics to avoid taking the test or had to be cajoled by the officer to comply with testing. *Id*. at 950. To the contrary, this Court noted that the licensee was polite and cooperative, and requested another opportunity to provide an adequate sample. *Id*. at 951. Further, we noted that the licensee's request to take another test

11

was well within the two-hour window of time following an arrest during which a breath test can be administered. *See* 75 Pa.C.S. §3802(a)(2).[5]

In sum, we explained that

> [i]t is well established that anything other than an unqualified, unequivocal assent to a chemical test constitutes a refusal. What is less clear is how many chances a licensee must be given to consent or refuse. **Refusal cases are highly fact-sensitive**. **The crucial, determinative factor we glean from the cases is whether [the Bureau's] evidence shows that the licensee deliberately tried to delay or undermine the testing process**. **Such evidence was simply not present in this case.** Rather, the evidence showed, and the trial court found, that Licensee made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time. This conduct does not constitute a refusal. **Stated otherwise, [the Bureau] is incorrect that in every case where the officer decides not to give the licensee a second chance at a breathalyzer, it has proven a refusal to consent to chemical testing**.

*Id*. at 951 (emphasis added).

Here, when reviewing the highly fact-sensitive nature of this case, we conclude that the Bureau failed to put forth sufficient evidence as to the "determinative factor [of] whether [the Bureau's] evidence show[ed] that [Fullam] deliberately tried

---

[5] This section establishes what is known as the "two-hour rule," providing that:

> [a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. §3802(a)(2).

12

to delay or undermine the testing process." *Id*. Although the trial court determined the testimony of Troopers Wright and Giarrizzo was credible, the Troopers' testimony is insufficient to establish that Fullam refused the test. First and foremost, Trooper Wright did not testify that Fullam was exhibiting any physical behaviors indicating that he was attempting to refuse the test. There was no testimony by Trooper Wright indicating that Fullam was merely puffing air into his cheeks, blowing weakly, or blowing out the side of his mouth. Trooper Wright did not testify that he had to cajole Fullam, or that he told him to blow harder or the breath would not register. He only testified that, based on his reading of the Result Ticket, Fullam's breath was "not proper." (N.T. at 21.) Yet, Trooper Wright testified that if the second breath was not good, it would have disabled the instrument. Nevertheless, he stopped the test before the DataMaster was disabled; therefore, the Result Ticket does not establish a refusal either.

To the contrary, Trooper Wright testified that he did not have "**any independent recollection [that Fullam] demonstrated a demeanor or symptoms that he was intentionally trying not to give a proper breath sample**." (N.T. at 25, R.R. at 27a) (emphasis added). Trooper Wright could not definitively testify to Fullam's behavior, and instead merely assumed that Fullam "must have not been giving a proper sample the second time." (N.T. at 22, R.R. at 24a.) Trooper Wright explained that he only had a **vague** independent recollection of Fullam's test, and that his testimony was limited to "what [he] would normally [do] and usually [does] in [his] process and procedure in cases like this." (N.T. at 24, R.R. at 26a.) Moreover, the Bureau did not refresh Trooper Wright's recollection as to any deliberately evasive behavior on Fullam's part using the DL-26A form or other similar documents.

13

In many cases we have identified the kind of testimony establishing that a refusal occurred. In all these cases there was testimony by the administering officer indicating that the licensee was exhibiting behaviors indicating that he was deliberately refusing the test. *See Fernandez-Solano v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1731 C.D. 2019, filed Aug. 21, 2020) (unreported)[6] (concluding that a refusal occurred where the officer testified that the licensee "would begin to blow, and then he would stop"); *Giannopoulos v. Department of Transportation, Bureau of Driver Licensing*, 82 A.3d 1092, 1095 (Pa. Cmwlth. 2013) (concluding that a refusal occurred where the test administrator testified that he told the licensee to "blow harder and steady," but that there was a "stuttering of the breath or an inconsistent . . . flow of his breath"); *Burkhart v. Department of Transportation, Bureau of Driver Licensing*, 934 A.2d 161, 163 (Pa. Cmwlth. 2007) (concluding that a refusal occurred where the administrator testified that the "[l]icensee stopped blowing at times and did not keep a tight seal around the mouthpiece"); *Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420, 422 (Pa. Cmwlth. 1998) (concluding that a refusal occurred after eight attempts where the licensee failed to make a tight seal with his mouth around the breathalyzer tube, would cause his breath to escape from the side of his mouth, or would puff air into his cheeks).

Additionally, in numerous cases where this kind of deliberate behavior was attested to, licensees have been given multiple chances to provide a sufficient sample or have been warned they were not blowing into the breathalyzer properly. *See Lucas v. Department of Transportation, Bureau of Driver Licensing*, 854 A.2d 639,

---

[6] *Fernandez-Solano* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

641 (Pa. Cmwlth. 2004) (offering licensee two attempts to complete a breath test, where licensee was allowing air to escape the sides of his mouth while attempting to produce a sample); *Postgate v. Department of Transportation, Bureau of Driver Licensing*, 781 A.2d 276, 278 (Pa. Cmwlth. 2001) (warning the licensee "several times that he was [not] blowing. . . ."); *Department of Transportation, Bureau of Driver Licensing v. Pestock*, 584 A.2d 1075, 1076 (Pa. Cmwlth. 1990) (providing the licensee with several opportunities to take the test and explaining the procedure each time after the licensee was allowing air to escape from the sides of his mouth).

Simply, this kind of testimony was not offered here nor does the Result Ticket from the DataMaster indicate that Fullam provided an "insufficient sample." *Reinhart*, 954 A.2d at 767 ("In all of these cases, however, the fact-finder determined the licensees deliberately failed to provide sufficient breath samples. The basis for these determinations was either credited testimony of the administering officer or an evidence ticket indicating the licensee provided an insufficient sample."). Although the licensee in *Bomba* asked for another opportunity to take the test, that fact is not determinative in this matter due to the highly fact-sensitive nature of these cases. Here, due to the lack of testimony that Fullam was deliberately attempting to avoid giving an adequate sample, it would have been appropriate for Trooper Wright to ask Fullam to give another test. This is bolstered by the fact that there was no testimony that Fullam was close to being outside of the two-hour window specified in Section 3802(a)(2) of the Vehicle Code, 75 Pa.C.S. §3802(a)(2), for obtaining a sample. This Court has stated that there is no such rule that "*one, and only one unsuccessful attempt to take the test in all cases* can be considered a refusal by the police and [the Bureau]." *Department of Transportation, Bureau of Driver Licensing v. Harper*, 544 A.2d 80, 82 (Pa.

15

Cmwlth. 1988).[7] Based on the record before us, Fullam should have been given another opportunity to complete the test, and we cannot conclude that he otherwise refused the test.

_____

PATRICIA A. McCULLOUGH, Judge

---

[7] Due to our disposition, we need not answer the question of whether Trooper Wright's testimony as to his assumptions was admissible under the Pennsylvania Rules of Evidence. As we have concluded, the testimony of Trooper Wright—admissible or not—was insufficient to carry the Bureau's burden.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Fullam, :
              Appellant :
            : No. 124 C.D. 2020
          v. :
              :
Commonwealth of Pennsylvania :
Department of Transportation, :
Bureau of Driver Licensing :

## *ORDER*

AND NOW, this 30th day of March, 2021, the December 16, 2019 Order of the Court of Common Pleas of Montgomery County is reversed.

_____
PATRICIA A. McCULLOUGH, Judge